NEUROLOGICAL ASSOCIATES–H. HOOSHMAND, M.D., P.A., a Florida professional association, and Hooshang Hooshmand, M.D., Plaintiffs,

v.

Otis R. BOWEN, Secretary, United States Department of Health and Human Services and Blue Cross/Blue Shield of Florida, a Florida corporation, Defendants.

No. 86–8374–Civ.

United States District Court, S.D. Florida.

March 17, 1987.

Roy Glass, St. Petersburg, Fla., for plaintiffs.

Robert Chesnut, Dept. of Justice, Civil Div., Washington, D.C., for defendants.

## FINAL ORDER OF DISMISSAL

ZLOCH, District Judge.

THIS MATTER is before the Court upon (1) the Motion for Preliminary Injunction (DE 5) filed herein by the Plaintiffs, and (2) the Motion to Dismiss (DE 10) filed herein by the Defendants. Oral argument on the issues presented therein was held before this Court on October 10, 1986.

Plaintiff, HOOSHANG HOOSHMAND, M.D. ("HOOSHMAND"), is the owner of Plaintiff, NEUROLOGICAL ASSOCI-ATES–H. HOOSHMAND, M.D., P.A. ("NEUROLOGICAL"). NEUROLOGICAL operates offices in Vero Beach, Florida, where HOOSHMAND and his employees provide treatment and services in the field of neurology. Defendant, BLUE CROSS/BLUE SHIELD OF FLORIDA ("BCBSF") is a carrier or fiscal intermediary under contract to the United States Department of Health and Human Services ("HHS") to promote efficient administration of certain HHS programs. At issue herein is the Health Insurance for the Aged and Disabled Program, more commonly known as Medicare. 42 U.S.C. Section 1395 et seq. The Secretary of HHS is responsible for administering the Medicare program, which consists of two (2) parts. Part A provides hospital insurance for eligible beneficiaries, but is not at issue herein. Part B is a voluntary subscription program of supplementary medical insurance which covers approximately 80% of the reasonable charges for certain other services such as laboratory tests and x-rays. Benefits under Part B are financed by appropriations from the Treasury and by premiums paid by those who choose to enroll in the Part B program. 42 U.S.C. Sections 1395j, 1395r, 1395s and 1395w.

The Secretary of HHS is authorized by Congress to contract with carriers such as BCBSF, which carriers receive the actual requests for payments (from beneficiaries or their assignees), determine whether the claim is covered by Medicare, and if so, determine the proper amount of payment and pay the claim. 42 U.S.C. Section 1395u(a)(1)(A). BCBSF has contracted with HHS to administer Medicare Part B.

Plaintiffs' suit for declaratory and injunctive relief and damages is brought pursuant to 42 U.S.C. Sections 405(g) and 1395y(d)(3) and 28 U.S.C. Sections 1331, 1343 and 1346.

On October 1, 1984, Plaintiffs entered into a Medicare Participation Physician or Supplier Agreement with the Defendants. Previously, Plaintiffs had entered into a written agreement with the Medicare program to accept assignment of Part B claims. In that agreement, the Medicare program agrees to give Plaintiffs notice and a hearing prior to their exclusion from the program; the agreement does not provide for any notice or hearing if the program temporarily withholds payments to the plaintiff. On October 24, 1985, HHS directed BCBSF to withhold further payments to Plaintiffs under 42 C.F.R. Section 405.371(b).

In their complaint, Plaintiffs allege that they have the right to an immediate hearing on the withholding of Part B payments pursuant to their statutory rights under 42 U.S.C. Section 1395y(d)(3) and their constitutional rights under the due process clause of the United States Constitution. Plaintiffs' claims to statutory and constitutional redress present issues which shall be examined separately. Initially, the Court will address Defendant BCBSF' assertion that this Court lacks subject matter jurisdiction.

A review of the pertinent caselaw shows that it is clearly established within this Circuit that the district courts lack jurisdiction over Medicare fiscal intermediaries under the doctrine of sovereign immunity. *Matranga v. Travelers Ins. Co.*, 563 F.2d 677 (5th Cir.1977); *Peterson v. Weinberger*, 508 F.2d 45 (5th Cir.1975); *Peterson v. Blue Cross/Blue Shield of Texas*, 508 F.2d 55 (5th Cir.1975).

Although the carrier or fiscal intermediary makes determinations of amounts to be paid on claims and disburses funds provided by the government, the United States is the real party in interest. *Matranga, supra.* An issue integrally related to that of sovereign immunity was recently deter-

mined by this Court in Case No. 85–8274–Civ-Zloch, *Neurological Associates et al. v. Blue Cross/Blue Shield of Florida,* a case nearly identical to the instant one except that Plaintiffs had failed to join the real party in interest, the Secretary of HHS. That case was dismissed by this Court, without prejudice, pursuant to the doctrine of derivative jurisdiction due to the fact that the action was brought under the Medicare Act and had failed to join the real party in interest. Since the state court had lacked jurisdiction over the matter, the federal court to which the action was removed must dismiss even if the federal court would have had jurisdiction if the action had originally been brought there. *McRory v. Hobart Brothers Company, Inc.,* 732 F.2d 1533 (11th Cir.1984).

■ Plaintiff argues that the doctrine of sovereign immunity does not apply to BCBSF because said doctrine only protects BCBSF to the extent that it acted within the scope of its official duties. This argument confuses the doctrines of official immunity and sovereign immunity. Official immunity protects individual officers of the government from suit provided they have acted within the outer perimeter of their official duties. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). No such individuals are named in the complaint herein. Furthermore, even where a plaintiff alleges "willful and wanton misconduct", sovereign immunity still protects the fiscal intermediary from suit. *Anderson v. Occidental Life Insurance Co. of California,* 727 F.2d 855 (9th Cir.1984), citing, *Matranga, supra.* Accordingly, the Court finds that it lacks subject matter jurisdiction over BCBSF pursuant to the doctrine of sovereign immunity.

### STATUTORY CLAIM

The Court now turns to Plaintiffs' statutory claim to a hearing regarding the withholding of their payments. As noted above, HHS directed BCBSF to withhold further payments to Plaintiffs under 42 C.F.R. Section 405.371(b) which provides in pertinent part:

> (b) Fraud or misrepresentation. The provisions of paragraph (a) of this section shall not apply where the intermediary or carrier has reliable evidence that the circumstances giving rise to the need for a suspension of payments involves fraud or willful misrepresentation. Instead the intermediary or carrier may suspend payments without first notifying the provider or other supplier of an intention to suspend payments....

Plaintiffs were also notified that they could continue to submit Part B claims for processing and that the assignment remained in effect pending the outcome of a grand jury investigation into fraud and misrepresentation in connection with plaintiffs' actions and pending the Secretary's final determination in the matter.

Although Plaintiffs payments were temporarily suspended pursuant to 42 C.F.R. 405.371(b), supra., they claim the right to an immediate evidentiary hearing pursuant to 42 U.S.C. 1395y(d)(3) which provides:

> Any person furnishing services described in paragraph (1) who is dissatisfied with a determination made by the Secretary under this subsection shall be entitled to reasonable notice and opportunity for a hearing thereon by the Secretary to the same extent as is provided in Section 405(g) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in Section 405(g) of this title.

What Plaintiffs appear to overlook is that their Medicare Part B payments were withheld pursuant to 45 C.F.R. Section 405.-371(b), *supra.* Under 42 C.F.R. Sections 405.370–.373, carriers must withhold payments on claims where there is reliable evidence of an overpayment, either due to innocent mistake or willful misrepresentation. 42 C.F.R. Section 405.371(a) gives the provider such rights as prior notice and opportunity for hearing in the event that payments are temporarily suspended. However, 42 C.F.R. Section 405.371(b) does not provide these procedures when the carrier has reliable evidence of fraud or

misrepresentation. In such situations, the carrier must notify the Regional Office of the Office of the Inspector General. Once the proper approval is received, the carrier should withhold payment of all claims, whether already in process or subsequently received, until the underlying investigation involving the particular provider has concluded. Under 42 C.F.R. Section 405.-371(b), a provider need not be given prior notice; he may simply be notified concurrently with the withholding of payments. Similarly, there is no right to a hearing while the Secretary is investigating the underlying criminal charges. The claims continue to be processed and allowable amounts credited to the provider's account.

At the conclusion of the investigation, the withheld funds are released to the provider so long as no evidence of fraud has been established. If, however, evidence of fraud is established, a variety of sanctions along with their respective remedies may be employed. The Secretary may make a final determination that the provider is to be excluded from the Medicare program for a specified period of time due to misrepresentation or fraud in connection with claims. It is *after* this final determination by the Secretary and *before* the exclusion from the Medicare program that the affected party (provider) is given notice of the proposed action and an opportunity to appear before a Departmental official. 42 C.F.R. Section 420.105. If, following such hearing, the Department concludes that exclusion is the appropriate sanction, the excluded party is entitled to notice, a post-exclusion hearing pursuant to 42 U.S.C. Section 405(b) and judicial review pursuant to 42 U.S.C. Section 405(g).

■ Despite the procedure involving claims withheld under 42 C.F.R. 405.371(b) as outlined above, Plaintiffs claim entitlement to a hearing pursuant to 42 U.S.C. 1395y(d)(3). Judicial review under Section 1395y(d)(3) is available only after a final determination has been made by the Secretary that the particular provider has defrauded the Medicare program. In that situation, the provider has been excluded from the Medicare program and may then pursue the remedy of judicial review of the Secretary's decision. Unlike that situation, the temporary withholding of payments pursuant to 42 C.F.R. 405.371(b), as presented herein, is *not* a final determination and is *not* an exclusion from the Medicare program. It therefore does not entitle the provider to a hearing pursuant to 42 U.S.C. Section 1395y(d)(3).

42 U.S.C. Section 1395y(d) and 42 C.F.R. 405.371(b) are separate and unrelated provisions with entirely different functions. Section 1395y(d) contains a prospective sanction in that the Secretary may exclude the provider from future participation in the Medicare program based upon a *final* determination of fraud or misrepresentation. Under such exclusion, payment is denied, not withheld. This provision does not provide an interim retroactive measure such as that provided in 42 C.F.R. 405.-371(b). Under that section, the government is afforded the protection of determining whether past overpayments have been made and can prevent future losses by temporarily withholding payments, while still processing all claims. There is no exclusion pursuant to this provision until a final decision is made by the Secretary.

Plaintiffs' cited caselaw simply does not support their assertion of a right to immediate evidentiary hearing during the course of an investigation pursuant to 42 C.F.R. Section 405.371(b). In *Klein v. Heckler,* 761 F.2d 1304 (9th Cir.1985), a provider was informed by his carrier that his payments were being suspended pursuant to 42 C.F.R. 405.370–.373. Provider was indicted by a federal grand jury of various charges involving fraudulent claims and subsequently acquitted of all charges, following a jury trial. Despite the acquittal, and nearly three years later, the Secretary made a determination that the provider had defrauded the program and that the withheld funds would be recouped. Under those circumstances, and following a final determination by the Secretary, the Ninth Circuit held that a hearing was proper and necessary pursuant to 42 U.S.C. Section 1395y(d)(3).

Another case cited by Plaintiffs, *Eisenberg v. Mathews*, 420 F.Supp. 1274 (E.D.Pa. 1976), is also readily distinguishable from the instant case. There, the plaintiff's Medicare payments continued to be withheld for over two years even though the grand jury failed to return an indictment and the Secretary had made a final determination. In the instant case, Plaintiff HOOSHMAND has been indicted by a federal grand jury (January 20, 1987) for fifteen (15) counts of Medicare fraud. At this point, the Secretary is still in the process of making a final determination as to whether Plaintiffs will be excluded from the Medicare program.

A careful review of the caselaw interpretation of 42 U.S.C. Section 1395y and 42 C.F.R. 405.371(b) as well as their legislative histories shows clearly that Plaintiffs are not entitled to a Section 1395y(d)(3) hearing while funds are being temporarily withheld pursuant to 42 C.F.R. Section 405.371(b). Section 405.371(b) could not have been promulgated under the authority of Section 1395y(d) since Section 1395y(d) did not exist when Section 405.371(b) was published and made effective. The provisions of 42 C.F.R. Section 405.370–.373 were promulgated under the Secretary's general rule making authority contained in 42 U.S.C. Section 1395h. 37 Fed.Reg. 10723 (May 27, 1972). By contrast, 42 U.S.C. Section 1395y(d) was not added to the Medicare statute until October 20, 1972. Pub.L. No. 92–603, Section 229(a), 86 Stat. 1408 (1972). Additionally, a review of the legislative history of Section 1395y(d) reveals that its purpose is to exclude from *future* participation in the Medicare program any nursing home or provider that has defrauded the program. *Homewood Professional Care Center, Ltd. v. Heckler*, 764 F.2d 1242, 1250 (7th Cir.1985); H.R.Rep. No. 231, 92nd Cong. 2d Sess., reprinted in 1972 U.S.Code Cong. & Ad.News 4989, 5085.

### DUE PROCESS CLAIM

This Circuit has already determined that a Medicare provider has no due process right to a hearing during the course of a fraud investigation pursuant to 42 C.F.R. Section 405.371(b). *Peterson v. Wein-*

*berger*, 508 F.2d at 50–51. It has also been conclusively established that Medicare providers have no constitutional right to a hearing prior to being suspended from the program. *Northlake Community Hospital v. United States*, 654 F.2d 1234, 1241–45 (7th Cir.1981); *Town Court Nursing Center, Inc. v. Beal*, 586 F.2d 266, 277–78 (3rd Cir.1978).

Plaintiffs do not possess jurisdictional access to this Court under the provisions of 28 U.S.C. Sections 1331 or 1346. 42 U.S.C. Section 405(h). *V.N.A. of Greater Tift County, Inc. v. Heckler*, 711 F.2d 1020, 1024–27 (11th Cir.1983). Therefore, Plaintiffs may only claim jurisdiction under 42 U.S.C. 405(g), which allows for judicial review as follows:

> Any individual, after any *final* decision of the Secretary made after a hearing to which he was a party ... may obtain review of such decision by a civil action commenced ... in the district court of the United States....

[emphasis added]

■ The United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) did recognize a narrow exception to the finality requirement of 42 U.S.C. 405(g) wherein this Court might have jurisdiction if the Plaintiff could raise a colorable constitutional claim. However, plaintiffs' due process challenge to 42 C.F.R. Section 405.371(b) has already been tried and rejected by this Circuit and thus, no colorable constitutional claim has been set forth by the Plaintiffs herein. *Peterson v. Weinberger*, 508 F.2d at 50–51. Moreover, the Court in *Mathews, supra.*, which held that an evidentiary hearing was not required prior to the initital termination of disability benefits, specifically stressed that:

> ... substantial weight must be given to the good faith judgments of the individuals charged by Congress with the administration of social welfare programs that the procedures they have provided assure fair consideration of the entitlement claims of individuals.... This is especially so where, as here, the prescribed

procedures not only provide the claimant with an effective process for asserting his claim prior to any administrative action, but also assure a right to an evidentiary hearing, as well as to subsequent judicial review before the denial of his claim becomes final. . . .

We conclude that an evidentiary hearing is not required prior to the termination of disability benefits and that the present administrative procedures fully comport with due process.

424 U.S. at 349, 96 S.Ct. at 909. [citations omitted]. Accordingly, the Court finds no basis for plaintiffs' assertion of a due process right to an evidentiary hearing pursuant to 42 U.S.C. 1395y(d)(3).

Although the Court finds that Plaintiffs have asserted neither a statutory nor a constitutional basis for an evidentiary hearing and therefore finds that dismissal of the above-styled cause is merited, a short discusion of Plaintiffs' Motion for Preliminary Injunction is in order.

In order to obtain a preliminary injunction, Plaintiffs must show that: (1) a substantial likelihood that they will prevail on the merits of their claims; (2) that they will suffer irreparable harm if they are not granted injunctive relief; (3) that the benefits the injunction will provide them outweigh the harm it will cause the defendants; and (4) that the injunction will not harm public interests. *Callaway v. Block*, 763 F.2d 1283, 1287 (11th Cir.1985).

Plaintiffs have not made a sufficient showing with regard to any of the prerequisites noted above. Certainly they have not shown a likelihood that they will prevail on the merits of their claim for an evidentiary hearing, illustrated by the Court's discussion of the relevant statutory provisions and caselaw above.

■ There is also little evidence that any harm to Plaintiffs is or may be "irreparable". One illustration of that is the fact that the instant action (as noted before, nearly identical to the one previously filed with this Court but lacking HHS as a party Defendant), was filed nearly four (4) months after the earlier action, 85–8274–Civ-Zloch, was dismissed without prejudice.

Furthermore, Plaintiffs have *not* been suspended from the Medicare program and continue to submit claims for payment to BCBSF. A temporary suspension of payments to a Medicare provider does not constitute irreparable harm. *Group Health, Inc. v. Schweiker*, 549 F.Supp. 135, 144 (S.D.Fla.1982); *See also, Sampson v. Murray*, 415 U.S. 61, 89, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974).

Finally, the Plaintiffs have not shown either that the benefits of injunctive relief will outweigh the harm posed to Defendants or that such relief will not harm public interests. The Department of Health and Human Services has a critical interest in maintaining the integrity of the Medicare program for the benefit of providers, patients and taxpayers generally. As set forth in *Mathews, supra.*, the Supreme Court has expressed judicial faith in Congressional intent with respect to administrative guidelines for the smooth operation of programs like Medicare. This Circuit has recognized no statutory or due process right to an evidentiary hearing for Medicare providers prior to a final determination by the Secretary. Furthermore, an evidentiary hearing might seriously undermine another vital public interest, that of the secrecy of ongoing criminal grand jury proceedings, which have just recently resulted in the return of an indictment against HOOSHMAND (*United States of America v. Hooshang Hooshmand*, Case No. 87–8001–Cr-Paine, United States District Court, Southern District of Florida).

Accordingly, the Court having carefully considered the merits of the above-said Motions, having thoroughly reviewed the court file, having heard argument of able counsel of record and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED as follows:

1. The Motion for Preliminary Injunction (DE 5) filed herein by the Plaintiffs be and the same is hereby DENIED;

2. The Motion to Dismiss (DE 5) filed herein by the Defendants be and the same is hereby GRANTED;

3. The above-styled cause be and the same is hereby DISMISSED, with prejudice.