Wesley Hal LIVINGSTON, Plaintiff,

v.

BLUE CROSS AND BLUE SHIELD OF
ALABAMA, et al., Defendants.

Civ. A. No. 90–00697–B–M.

United States District Court,
S.D. Alabama, S.D.

April 2, 1992.

Dennis Knizley, Knizley & Powell, Mobile, Ala., for plaintiff.

E. Elliot Barker, J. Stuart Wallace, Barker & Janecky, Mobile, Ala., for defendants.

546

## MEMORANDUM OPINION AND ORDER

BUTLER, District Judge.

This matter is before the Court on a motion for summary judgment filed by defendants Blue Cross Blue Shield of Alabama, James Louderback and Norman Love. After due consideration of the briefs and evidence submitted by the parties and of the applicable law, the Court concludes that the defendants are entitled to summary judgment.

## FINDINGS OF FACT

At all times material to this lawsuit, Blue Cross and Blue Shield of Alabama ("Blue Cross"), was a party to a contract with the Secretary of Health and Human Services ("HHS"). The contract provides that Blue Cross shall act as a "carrier" within the meaning of Section 1842 of the Social Security Act, as amended, 42 U.S.C. § 1395u, and shall provide services on behalf of the Department of Health and Human Services in order to carry out the provisions of the Medicare Act. One of the services which the contract obligates Blue Cross to provide is to identify cases of suspected fraud or abuse and to develop and refer them to the Office of investigations of the Office of Inspector General of HHS ("OIG") for consideration and application of criminal, civil, monetary penalty or administrative sanctions actions.

The contract between Blue Cross and the Secretary of Health and Human Services Provides for the indemnification of Blue Cross by the Secretary:

In the event the Carrier or any of its directors, officers, employees, or other persons who are engaged or retained by the Carrier to participate directly in the claims administration process, are made parties to any judicial or administrative proceeding arising, in whole or in part, out of any functions of the Carrier under this contract in connection with any claims for benefits by an individual or his assignee or provider of services, then the Secretary shall, to the extent permitted by law, hold the Carrier harmless for all judgments, settlements awards, and

costs, in favor of such individual or his assignee or provider of services, incurred by the Carrier or any of its directors, officers or other persons who are engaged or retained by the Carrier to participate directly in the claims administration process ...

There are, however, limited exceptions to the indemnity provision. Under the terms of the contract Blue Cross is not entitled to indemnity for a judgment

if the liability underlying the judgment or award was the direct consequence of conduct on the part of the Carrier determined by judicial proceedings or the agency making the award to be criminal in nature, fraudulent, or grossly negligent.

During the time period relevant to this case, defendant James Louderback ("Louderback") was employed by Blue Cross as a health care representative. As such his responsibilities included reviewing suspected instances of Medicare fraud and abuse and referring the information gathered in his review to the OIG.

In 1985 and 1986, the plaintiff, Hal Livingston, owned and operated Shoals Medical Equipment Company ("Shoals Medical"). Shoals Medical provided durable medical equipment such as oxygen concentrators to patients who are Medicare beneficiaries. Shoals Medical used contractors to deliver its durable medical equipment to Medicare beneficiaries, to set up the equipment at the beneficiary's home and to provide periodic service on the equipment to the Medicare beneficiary.

Defendant Norman Love ("Love") was an employee of Blue Cross at all times relevant to this lawsuit and is still employed by Blue Cross. From 1976 until March 1, 1986 he was department manager of the Program Evaluation and Utilization Review Department. On March 1, 1986, he became Director of the Government Claims Division of Blue Cross.

In 1985, Blue Cross received a complaint from a Medicare patient's physician that Shoals Medical was billing a Medicare patient for oxygen equipment which the pa-

tient's doctor had not ordered and which had not been provided to the patient. Blue Cross investigated this complaint and requested that Shoals Medical refund all monies paid it for this oxygen concentrator. Shoals Medical complied. Subsequently, Blue Cross conducted an audit and found instances where Shoals Medical had billed for services which it did not render.

In May of 1986, Livingston informed Blue Cross that one of his contractors had been causing Shoals Medical to bill for services not rendered and had forged doctors' names on Medicare certification forms. Livingston terminated this contractor and sent Blue Cross a letter regarding the situation.

In July of 1986, Blue Cross began conducting an investigation of Shoals Medical. Defendant Louderback gathered medical records of Medicare beneficiaries for whom Shoals submitted bills and visited Medicare beneficiaries to whom Shoals had provided equipment. In August of 1986 Blue Cross sent the a referral package continuing the information gathered in its review to the OIG.

The OIG assigned an investigator to review the Blue Cross referral and investigate Shoals Medical. After conducting an investigation, the investigator presented his findings to the United States Attorney for the Middle District of Alabama. This information was presented to a grand jury which returned an eight count indictment charging the plaintiff and a co-defendant with one count of conspiracy to commit Medicare fraud and seven counts of Medicare fraud. These charges arose, in part, from statements given by three independent contractors who worked for Livingston in different areas of the state, all of whom alleged that Livingston had directed them to submit false claim forms.

In May of 1988, Livingston was tried before a jury and found not guilty as to all eight counts. As a result of that prosecution, Livingston filed the instant action against Blue Cross, James Louderback and Norman Love alleging malicious prosecution.[1]

## CONCLUSIONS OF LAW

The instant action was removed to this Court pursuant to 28 U.S.C. § 1442(a)(1) which provides for the removal of civil actions initiated in state court against "[a]ny officer of the United States or any agency thereof, or person acting under him for any act under color of such office ..."[2] This is deemed to be such a suit, even though it is brought against a corporation and its employees, because of the contractual relationship between defendant Blue Cross and the Department of Health and Human Services, an agency of the United States. For the reasons stated more fully below, the Court finds that all defendants are immune from suit.

Defendants have raised two issues in their motion for summary judgment. The first is a renewed challenge to the Court's subject matter jurisdiction based on the doctrine of sovereign immunity, an issue first raised by Blue Cross in a motion to dismiss filed prior to discovery. In denying that motion this Court held that the plaintiff was entitled to discover facts which might support subject matter jurisdiction. The second issue raised by defendants is whether the plaintiff can adduce sufficient facts to support each element of his claim for malicious prosecution. Because the Court finds that all defendants are entitled to immunity, there is no need to address the malicious prosecution claim.

 Although Blue Cross and the individual defendants are all entitled to immu-

1. The initial suit also named as a defendant OIG investigator Albert Hallmark who was subsequently dismissed from the action.

2. Plaintiff originally filed this malicious prosecution action against defendants Blue Cross, Louderback, Love as well as the Department of Health and Human Services and Albert Hallmark, an HHS employee. The action was re-

moved from state court by defendants HHS and Hallmark, and Judge Pittman *dismissed the* claims against HHS and Hallmark and remanded the action to state court for lack of subject matter jurisdiction. The remaining defendants removed the action once again, asserting that they are officers of an agency of the United States or persons acting thereunder.

nity, their immunity derives from different sources. The former is protected by sovereign immunity while the latter are protected by official immunity. Sovereign immunity protects the government from financial liability. *Nu–Air Mfg. Co. v. Frank B. Hall & Co.*, 822 F.2d 987, 996 (11th Cir. 1987), *cert. denied*, 485 U.S. 976, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988). Official immunity generally protects individual government officials from suit to the extent they have acted within the scope of their official duties. Id.

■■■ Binding precedent from the former Fifth Circuit holds that Medicare fiscal intermediaries are entitled to sovereign immunity. *See Matranga v. Travelers Ins. Co.*, 563 F.2d 677 (5th Cir.1977); *Peterson v. Weinberger*, 508 F.2d 45 (5th Cir.), *cert. denied*, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975); *Peterson v. Blue Cross/ Blue Shield of Texas*, 508 F.2d 55, 57–58 (5th Cir.), *cert. denied*, 422 U.S. 1043, 95 S.Ct. 2657, 45 L.Ed.2d 694 (1975).[3] This Court does not read these cases to extend blanket immunity to Medicare fiscal intermediaries. Rather, a more logical interpretation is that the fiscal intermediary is entitled to sovereign immunity to the extent that the government is exposed to financial risk. Support for this interpretation can be found in *Anderson v. Occidental Life Ins. Co.*, 727 F.2d 855 (9th Cir. 1984) in which the Ninth Circuit, relying on the *Peterson* cases and *Matranga*, held that a Medicare fiscal intermediary was immune from suit "because recovery would come from the federal treasury." *Id.* at 856. The court noted that the complaint did not allege "criminal, fraudulent or grossly negligent acts" which would exempt the government from its duty to indemnify the fiscal intermediary. *Id.* at 857.

Because a judgment against Blue Cross in this case would expose the government to liability under the terms of the indemnity agreement, Blue Cross is protected by the doctrine of sovereign immunity. Under the terms of the contract, Blue Cross is entitled to indemnity for any judgment against it unless the liability underlying the judgment was the direct consequence of conduct ... determined by judicial proceedings ... to be criminal in nature, fraudulent or grossly negligent.[4]

■■■ Plaintiff contends that Blue Cross was guilty of fraud in bringing about the indictment and, therefore, its actions fall outside the indemnity agreement. Plaintiff's allegation of fraud centers around the defendant Louderback's Grand Jury testimony. Plaintiff contends that Louderback lied to the Grand Jury by representing that thirty-three arterial blood gas studies were false or fictitious and by stating that plaintiff broke new ground by the utilization of contractors to provide durable medical equipment. Even assuming, *arguendo*, that these statements were made and were false, plaintiff has failed to demonstrate that these representations were material in obtaining the indictment against him or that they were made with knowledge of their falsity.

Fraud is the intentional misrepresentation of a material fact made with knowledge of its falsity and with the intent to deceive. *Pence v. United States*, 316 U.S. 332, 338, 62 S.Ct. 1080, 1083–84, 86 L.Ed. 1510 (1942). At least two of these elements are missing in this case. First, there is no evidence that either of these representations was material in bringing about the indictment. The indictment is a multicount indictment containing numerous allegations of medical fraud. It is not apparent how these two misrepresentations could have been material in obtaining such a lengthy and complex indictment. Second, plaintiff has presented no evidence that

---

**3.** Contrary to plaintiff's assertions, the proposition for which these cases are cited was not rejected by the Eleventh Circuit in *Nu–Air*. One of the defendants in *Nu–Air* cited the *Peterson* cases and *Matranga* in support of an official immunity argument. The Court noted that cases dealt with sovereign, rather than official immunity and held that they were not applicable since the justification for sovereign immunity, financial risk to the United States, was not present in that case.

**4.** Plaintiff does not argue that the defendants' conduct was criminal or grossly negligent.

Louderback knew, or should have known, of the falsity of these statements.

█ In attempting to distinguish this action from *Peterson v. Weinberger* and *Matranga,* plaintiff relies on *Rochester Methodist Hospital v. Travelers Ins. Co.,* 728 F.2d 1006 (8th Cir.1984). In that case the Eighth Circuit specifically refused to extend sovereign immunity to Medicare fiscal intermediaries charged with tortious conduct. The *Rochester* court distinguished the *Peterson* cases and *Matranga* by noting that in these cases there was no proof "that the intermediary acted beyond the scope of its authority" and that "[t]here was no allegation that the intermediary had committed a tort." *Id.* at 1015. This view, however, misconstrues *Peterson v. Weinberger*[5] and confuses the concepts of official immunity and sovereign immunity.

> Official immunity protects officers of the government from suit provided that they have acted within the outer perimeter of their official duties.

*Neurological Associates—H. Hooshmand v. Bowen,* 658 F.Supp. 468, 470 (S.D.Fla. 1987). Sovereign immunity, on the other hand, bars *any* unconsented suits against the sovereign. *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Because Blue Cross did not engage in fraudulent, criminal, or with gross negligence conduct, it is entitled to sovereign immunity. Sovereign immunity, in turn, bars all suits, even those alleging tortious conduct. *See Hooshmand,* 658 F.Supp. at 470.

It is not clear to the Court that Louderback and Love should also be entitled to sovereign immunity. The assertion that defendants are entitled to sovereign immunity based on Blue Cross's fiscal intermediary status is contrary to the policy behind sovereign immunity and seems to confuse the concepts of sovereign immunity and official immunity. The agreement between the government and Blue Cross provides for indemnity only to Blue Cross. As far as the Court can tell, the agreement does not require the government to indemnify employees of Blue Cross.

█ There is no need to resolve this issue, however, since these individual defendants are entitled to immunity from a different source. A thorough reading of the *Peterson* cases reveals that the source of immunity protecting the individual defendants is official immunity rather than sovereign immunity.[6] *Peterson v. Weinberger* involved three categories of defendants: (1) the United States and one of its agencies, the Department of Health Education and Welfare ("HEW"), (2) the corporations which served as Medicare fiscal intermediaries for HEW and (3) individual employees of HEW. The court held that the United States, HEW and the corporate defendants were entitled to sovereign immunity. The court, relying on *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), found that the individual defendants were shielded by official immunity because "[t]he alleged tortious acts were committed by agents of the Government responsible for the integrity of the Medicare program during the course of an investigation of purported violations of the Medicare Act." *Id.* at 51.

Although official immunity generally applies to government officials, courts have extended official immunity status to private individuals who serve in a quasi-official capacity. In *Peterson v. Blue Cross/Blue Shield,* the court, by implication, extended official immunity protection to an employee of a Medicare fiscal intermediary. That case which was removed from state court, arose from the same fact situation

---

**5.** What the Fifth Circuit Court actually held in *Peterson v. Weinberger* was that "[t]here is not the slightest indication that any of the **individual** defendants acted outside the line of duty or the scope of their employment in carrying out their official responsibilities." 508 F.2d at 51.

**6.** The Court maintains discretionary jurisdiction over plaintiff's ancillary claims against these defendants even though Blue Cross, the party giving rise to federal jurisdiction, is due to be dismissed. *See Bushman v. Seiler,* 755 F.2d 653, 655–56 (8th Cir.1985); *IMFC Professional Services v. Latin American Home Health,* 676 F.2d 152, 160 (5th Cir.1982). The Court chooses to maintain jurisdiction because the resolution of the claims against these defendants involves issues of federal law.

as *Peterson v. Weinberger* but involved additional claims and defendants, including an employee of fiscal intermediary Blue Cross. In holding that all defendants, were entitled to immunity, the court stated simply that "[w]hat we said in *Weinberger* concerning immunity is fully applicable here." *Id.* at 58.

In *Bushman v. Seiler*, 755 F.2d 653 (8th Cir.1985), the court held that a consultant employed by a Medicare fiscal intermediary was protected by official immunity from tort liability for actions within the scope of his authority. *Id.* at 655. In that case the defendant was charged with defamation based on a letter he wrote to the fiscal intermediary in the course of his investigation of the plaintiffs. The court held that the defendant was entitled to immunity for actions connected "with the general matters committed by law to the officer's control or supervision and not ... beyond the scope of his authority." *Id.* The court rejected the plaintiff's contention that the tortious nature of the defendant's alleged conduct stripped him of entitlement to immunity.

> [T]o separate the activity that constitutes the wrong from its surrounding context—an otherwise proper exercise of authority—would effectively emasculate the immunity defense. Once the wrongful acts are excluded from an exercise of authority, only innocuous activity remains to which immunity would be available. Thus, the defense would apply only to conduct for which it is not needed.

*Id.* at 656 (quoting *Wallen v. Domm*, 700 F.2d 124, 126 (4th Cir.1983)).

The extension of official immunity in these instances is in accordance with the policy underlying that doctrine. "Courts extend official immunity where the threat of liability 'might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.'" *Nu–Air*, 822 F.2d at 995 (quoting *Barr v. Matteo*, 360 U.S. 564, 571, 79 S.Ct. 1335, 1339, 3 L.Ed.2d 1434 (1959)). As the *Bushman* court noted, "[a]pplying immunity here is consistent with protecting 'officials who are required to exercise their discretion'

and promoting the 'public interest in encouraging the vigorous exercise of official authority.'" *Bushman*, 755 F.2d at 656 (quoting *Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978)).

Extension of official immunity to the individual defendants in this action is consistent with these policy considerations. The contract between Blue Cross and HHS charges the intermediary with the duty to investigate and report suspected instances of fraud and abuse. The claims against Louderback and Love arise from the investigation conducted by Louderback into Medicare claims submitted by plaintiff through Blue Cross. As the Eleventh Circuit noted in *Nu–Air*, exposing defendants to liability in this situation "frustrates paramount government objectives such as uncovering fraud in government programs." *Nu–Air*, 822 F.2d at 995.

In conclusion, the Court finds that all defendants are entitled to immunity. Blue Cross, by virtue of its status as a Medicare fiscal intermediary, is protected by the doctrine of sovereign immunity. Defendants Louderback and Love, by virtue of their quasi-official status as employees of a fiscal intermediary, are protected by official immunity.

Accordingly, it is ORDERED that the motion for summary judgment filed by defendants Blue Cross, James Louderback and Norman Love, be and hereby is GRANTED.