Michael Guy HOLTON, Plaintiff,

v.

BLUE CROSS and BLUE SHIELD
OF SOUTH CAROLINA, et al.,
Defendants.

No. CIV.A. 98–A–889–S.

United States District Court,
M.D. Alabama,
Southern Division.

July 27, 1999.

Anne Laura R. Parker, Ozark, AL, Rhon E. Jones, Thomas J. Methvin, Beasley, Allen, Crow, Methvin, Portis & Miles, PC, Montgomery, AL, for Michael Guy Holton, plaintiff.

David R. Boyd, Sterling G. Culpepper, Jr., Donald R. Jones, Jr., Balch & Bingham, Montgomery, AL, Robert P. MacKenzie, III, Reed R. Bates, Geoffrey S. Bald, Starnes & Atchison, Birmingham, AL, for defendants.

## *MEMORANDUM OPINION*

ALBRITTON, Chief Judge.

### I. *INTRODUCTION*

This cause is before the court on a Motion to Dismiss, filed August 19, 1998, by Blue Cross and Blue Shield of South Carolina d/b/a Palmetto Government Benefits Administrators ("Blue Cross and Blue Shield").[1]

---

1. The Complaint named "Palmetto Insurance Underwriters" as a Defendant, and a Summons was issue from the state court in that name. A letter was filed in state court from Palmetto Insurance Underwriters, Inc. with a letterhead showing the same address given in the Summons to "Palmetto Insurance Underwriters," but stating "You obviously have the wrong Palmetto Insurance," and pointing out that the company had never underwritten health coverage or had any dealings with Blue Cross and Blue Shield. Blue Cross and Blue Shield removed the case in its name "d/b/a Palmetto Government Benefits Administrator." The Plaintiff has never moved for default judgment against "Palmetto Insurance Underwriters" for failure to file an Answer, and apparently agrees that the company served was "the wrong Palmetto Insurance." Accordingly, the court concludes that the only proper "Palmetto" defendant is Blue Cross and Blue Shield "d/b/a Palmetto Government Benefits Administrators," and this Motion to Dismiss will dispose of any claim by the

Michael Guy Holton ("Holton") originally filed his Complaint in the Circuit Court of Coffee County, Alabama on June 26, 1998, alleging five state law claims. Count I alleges a claim for fraudulent misrepresentation. Count II alleges a claim for fraudulent suppression. Count III alleges a claim for innocent, reckless, and negligent misrepresentation and concealment. Count IV alleges breach of contract and failure to meet the duty of good faith and fair dealing. Count V alleges that the Defendants conspired to defraud Holton.

Blue Cross and Blue Shield removed the case to this court on August 12, 1998, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, and the other Defendants consented to and joined in the Notice of Removal. Holton filed a Motion to Remand on September 10, 1998. Because Holton did not file a brief in support of his Motion to Remand, despite an order from the court requiring him to do so, his Motion to Remand was denied.

## II. *MOTION TO DISMISS STANDARD*

■ Federal courts are courts of limited jurisdiction, and if a case does not come within the limited grant of power to the federal courts derived from Article III of the United States Constitution and from the legislative acts of Congress, a federal court does not have the power to hear or determine that case. *See Insurance Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Thus, absent jurisdiction over the subject matter of the plaintiff's claims against a defendant, the court must dismiss the plaintiff's claims. *See* Fed. R. Civ. P 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

Plaintiff against "Palmetto Insurance Underwriters."

## III. *FACTS*

Holton's Complaint avers the following facts:

Holton is a licensed professional counselor and a listed provider of mental health services under the CHAMPUS program. Compl. at ¶ 12. In April 1996, Defendant Palmetto ("Palmetto") was awarded a bid to underwrite mental health coverage for CHAMPUS beneficiaries and contracted with the United States Secretary of Defense to provide mental health services under CHAMPUS. Compl. at ¶ 7. Blue Cross and Blue Shield is the fiscal intermediary for Defendant Palmetto. Compl. at ¶ 8. Defendant Choice Behavioral Health Partnership ("Choice") reviews and approves all Alabama claims for Palmetto. Compl. at ¶ 9. Defendant Pam Moore ("Moore") is an area manager for Choice.[2] Compl. at ¶ 10.

In the course of his business, when Holton provided counseling services to Blue Cross and Blue Shield's CHAMPUS beneficiaries, Holton would submit claims to Defendants for payment. Compl. at ¶ 13. On or about August 8, 1997, Holton resubmitted claims that had been outstanding since April 11, 1996. Compl. at ¶ 15. Blue Cross and Blue Shield paid some, but not all, of these claims. Compl. at ¶ 16. Holton and his lawyer met with Defendants on or about October 27, 1997, and November 5, 1997. Compl. at ¶¶ 17–18. After the November meeting, Holton resubmitted the unpaid claims to Blue Cross and Blue Shield. Compl. at ¶ 19. Defendants have not paid the claims. Compl. at ¶ 20.

## IV. *DISCUSSION*

### A. Basis for Subject Matter Jurisdiction at the Time of Removal

Before addressing the immunity defenses and other grounds for dismissal assert-

2. Blue Cross and Blue Shield, Palmetto, Choice, and Moore are collectively referred to as "Defendants" in this Memorandum Opinion.

ed by Blue Cross and Blue Shield, there are some points of clarification that should be made. In an earlier Memorandum Opinion and Order, the court made reference to there being subject matter jurisdiction in this case under 42 U.S.C. § 1346. The grounds upon which jurisdiction was asserted in the Notice of Removal, however, were 42 U.S.C. § 1442(a)(1) and § 1446. The court clarifies that 42 U.S.C. § 1346 is not the basis for jurisdiction in this case and the United States is not a defendant in this case.

Because the Motion to Remand was summarily denied, due to Holton's failure to file a brief, the parties have never fully addressed the propriety of subject matter jurisdiction at the time of removal. The court finds that a limited discussion of the propriety of jurisdiction at the time of removal is helpful to understanding the application of the sovereign immunity defenses which have subsequently been raised in this case.

The United States Code provides in 28 U.S.C. § 1442(a)(1) that a civil action commenced in a state court against an agency of person acting under that agency, for any act under color of such office, may be removed by that person to the district court of the United States for the district and division embracing the place where it is pending. The Eleventh Circuit has stated that the Federal Officer Removal Statute creates a right of removal which is absolute whenever a suit in a state court is for any act under color of federal office, regardless of whether the suit could originally have been brought in federal court. *Magnin v. Teledyne Continental Motors,* 91 F.3d 1424 (11th Cir.1996). "If the statutory prerequisites are satisfied, section 1442(a)(1) provides an independent federal jurisdictional basis." *Id.* at 1427.

██ Proper removal under § 1442(a)(1) has two requirements: one, that the defendant advances a colorable defense arising out of his duty to enforce federal law, and two, that there is a causal connection between what the officer has done and the action against him. *Id.* The defense advanced need only be plausible; "its ultimate validity is not to be determined at the time of removal." *Id.* Any determination as to the merits is "collateral to the jurisdictional question." *Akin v. Big Three Industries, Inc.,* 851 F.Supp. 819 (E.D.Tex.1994). As one district court has explained it, if the connection to the United States is sufficient for purposes of removal and the plaintiff then alleges that the defendants were engaged in a "frolic of their own" as part of the claim, the defendants "should have the opportunity to present their version of the facts to a federal, not a state, court." *Group Health Inc. v. Blue Cross Assoc.,* 587 F.Supp. 887, 890–91 (S.D.N.Y.1984).

██ In this case, Blue Cross and Blue Shield has stated that "BCBS, in carrying out its duty to administer CHAMPUS[3] contract, which actions are the subject of this litigation, acted under the direction of the officers of the United States and agencies thereof, and acted under the color and authority of those officers." Notice of Removal at ¶ 5.

One federal court has explained that a sufficient showing of acting "under the color" of the United States has been made where the party puts in issue the questions of official justification and immunity. *Group Health Inc.,* 587 F.Supp. at 890. Another federal circuit has determined that a statement in the removal petition that the plaintiff's allegations were based on acts done by the defendant under color of his office as an employee of the United

**3.** "CHAMPUS" is an acronym for the Civilian Health and Medical Program of the Uniformed Services, a program established by Congress to provide medical care for dependents of members of the uniformed services. *See* 10 U.S.C. § 1079(a). This program is apparently now referred to as TRICARE. Because Blue Cross and Blue Shield and Holton have referred to the program as CHAMPUS, however, the court has also referred to the program as CHAMPUS.

States while he was acting in the scope of his employment was sufficient to give rise to a colorable defense. *See Jamison v. Wiley*, 14 F.3d 222 (4th Cir.1994). This court finds that Blue Cross and Blue Shield has adequately put in issue the question of whether it was acting as an agent of the United States so as to provide a colorable federal defense of sovereign immunity. Accordingly, this court has jurisdiction in this case pursuant to § 1442(a)(1).

**B. Asserted Grounds for Dismissal**

Holton has brought a claim for breach a contract and has brought fraud claims against Blue Cross and Blue Shield. Blue Cross and Blue Shield in turn has moved for dismissal on several grounds including that (1) it is entitled to sovereign immunity as a CHAMPUS fiscal intermediary administering a government benefit plan (2) Holton has failed to exhaust administrative remedies under the CHAMPUS regulatory scheme; (3) Holton failed to state his fraud claims with the particularity required under Fed.R.Civ.P. 9(b); and (5) Holton failed to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6).

### 1. Contract Claim

Holton has brought a breach of contract claim against Blue Cross and Blue Shield. Blue Cross and Blue Shield argues that it, like the United States, has sovereign immunity as to this claim and also argues that Holton has failed to exhaust his administrative remedies. The court will first address Blue Cross and Blue Shield's argument that it is entitled to sovereign immunity as a CHAMPUS fiscal intermediary.

### a. Sovereign Immunity

Blue Cross and Blue Shield argues that as an agent of the government it, like the United States, is entitled to sovereign immunity as to the Plaintiff's claims because it acts under the control of Director of OCHAMPUS, and ultimately the Secretary of the Department of Defense. Holton responds that Blue Cross and Blue Shield is not entitled to sovereign immunity because the United States is not the real party in interest in this case. Even though there is precedent outside of the Eleventh Circuit to the contrary, Holton states that he concedes that if there were an indemnity agreement by which a judgment would subject the government to liability, sovereign immunity would be afforded. As Holton points out, however, this court cannot base any decision on possible indemnity by the government because the parties have neither alleged the existence of, nor referred this court to any, indemnity agreement relevant to this case.

■ The court first notes that merely because this court has concluded that Blue Cross and Blue Shield has a colorable defense under federal law for purposes of removal jurisdiction does not preclude this court's inquiry into whether or not Blue Cross and Blue Shield is entitled to sovereign immunity. Even once a federal court determines that it has subject matter jurisdiction under § 1442(a) because a defendant has invoked sovereign immunity, the court may later determine that the defendant is not in fact entitled to such immunity. *See Jamison*, 14 F.3d at 238. As was earlier discussed, under § 1442(a)(1), removal jurisdiction exists whenever a colorable defense has been asserted, regardless of the ultimate outcome of the validity of that defense. *Id.*

■ Binding precedent in this circuit recognizes that fiscal intermediaries under the Medicare program are entitled to sovereign immunity. *See Matranga v. Travelers Ins. Co.*, 563 F.2d 677, 677–78 (5th Cir.1977)[4]; *Peterson v. Weinberger*, 508 F.2d 45 (5th Cir.1975). Based on this

---

**4.** In *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206 (11th Cir.1981)(*en banc* ), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1991.

precedent, a district court in this circuit extended sovereign immunity to CHAMPUS fiscal intermediaries. *See Vanderberg v. Carter,* 523 F.Supp. 279, 285 (N.D.Ga. 1981), *aff'd without op.,* 691 F.2d 510 (11th Cir.1982). Fiscal intermediaries are entitled to sovereign immunity, however, only "to the extent that the government is exposed to financial risk." *Livingston v. Blue Cross and Blue Shield of Alabama,* 788 F.Supp. 545, 548 (S.D.Ala.1992), *aff'd without op.,* 996 F.2d 314 (11th Cir.), *reh'g en banc denied,* 7 F.3d 242 (11th Cir.1993). Thus, the court must ask who will pay a judgment. If recovery would come directly from Blue Cross and Blue Shield, Blue Cross and Blue Shield would not be entitled to sovereign immunity. *See Rochester Methodist Hosp. v. Travelers Ins. Co.,* 728 F.2d 1006, 1012 (8th Cir.1984).

Blue Cross and Blue Shield states that federal regulations make it clear that funds expended for CHAMPUS benefits are federal funds provided to CHAMPUS fiscal intermediaries solely to pay CHAMPUS claims, and are not a part of or obtained from the CHAMPUS fiscal intermediaries funds related to other programs or insurance coverage. 32 C.F.R. § 199.1(e).

 In a previous Memorandum Opinion entered on March 4, 1999, this court concluded that the United States is the real party in interest for any purported breach of contract resulting from Blue Cross and Blue Shield's administration of CHAMPUS. The court also concluded, however, that it has jurisdiction over any contract claim which does not exceed $10,000, pursuant to the Tucker Act, codified at 28 U.S.C. §§ 1491 and 1346(a)(1). *See* Memorandum Opinion, March 4, 1999, at page 8; *see also Trauma Service Group v. Keating,* 907 F.Supp. 110, 115 n. 5 (E.D.Pa.1995)(stating that the United States has waived its immunity for contract claims under CHAMPUS). On March 15, 1999, Holton filed a stipulation that the amount in controversy for his breach of contract claim is $10,000 or less.

Since the government does not have sovereign immunity for the contract claim, and the Tucker Act allows for suits not in excess of $10,000 to proceed in federal district court, Blue Cross and Blue Shield also does not have sovereign immunity as to the contract claim and the claim may proceed in this court.

b. Exhaustion of Administrative Remedies

 Blue Cross and Blue Shield has argued that Holton should not be able to proceed with his claims in this court because he failed to exhaust his administrative remedies. "The doctrine of exhaustion of administrative remedies provides that 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Kobleur v. Group Hospitalization and Med. Serv., Inc.,* 954 F.2d 705, 709 (11th Cir.1992) (quoting *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938)), *reh'g denied,* 963 F.2d 387 (11th Cir.1992). Exhaustion protects administrative agency authority and promotes judicial efficiency. *McCarthy v. Madigan,* 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). Exhaustion is mandatory when Congress has prescribed it in the relevant statute. *McCarthy,* 503 U.S. at 144, 112 S.Ct. 1081; *see also Kobleur,* 954 F.2d at 711. When Congress has not prescribed exhaustion, whether to require exhaustion is a matter within the court's discretion. *See McCarthy* 503 U.S. at 144, 112 S.Ct. 1081; *Kobleur,* 954 F.2d at 711.

Congress did not prescribe exhaustion in the CHAMPUS statute. *See* 10 U.S.C. § 1079. However, the CHAMPUS regulations describe a detailed administrative procedure for participating providers, such as Holton, to follow to appeal a partially or totally denied claim. *See* 32 C.F.R. § 199.10. Holton does not plead or contend in either his complaint or his brief that he pursued or exhausted any administrative procedures. In fact, Holton argues that

he is exempt from the administrative procedures. Plaintiff's Brief Response at 2.

▬ Two factors guide the court's decision in how to exercise its discretion regarding exhaustion in a particular case. First, whether requiring exhaustion would further the policies underlying the exhaustion doctrine; and, second, whether an exception to the doctrine applies. *See Kobleur*, 954 F.2d at 711. The Eleventh Circuit has enumerated seven policies underlying the exhaustion doctrine: 1) to avoid premature interruption of the administrative process; 2) to let the agency develop the necessary factual background upon which decisions should be based; 3) to permit the agency to exercise its discretion or apply its expertise; 4) to improve the efficiency of the administrative process; 5) to conserve scarce judicial resources; 6) to give the agency a chance to discover and correct its own errors; and 7) to avoid the possibility that frequent and deliberate flouting of the administrative process could weaken the effectiveness of an agency by encouraging people to ignore its procedures. *Id.* at 711–12.

▬ The court finds that these policy considerations weigh in favor of requiring Holton to exhaust his administrative remedies as to the contract claim. The administrative process is the most appropriate forum to develop the factual background of this matter and to make the initial decision as to the outcome of Holton's request for payment under the requirements of CHAMPUS. Furthermore, it may be that resort to the administrative process will in fact reveal that Holton is entitled to coverage, which would allow the agency to correct its own mistake and provide Holton with coverage without expending more judicial resources. In light of these factors, there is no reason for the court to set a

precedent for CHAMPUS plaintiffs to circumvent the administrative process. In fact, another district court which has confronted the question of exhaustion of administrative remedies found that a plaintiff was required to exhaust administrative remedies under CHAMPUS. *See Trauma Serv. Group v. Keating*, 907 F.Supp. 110, 113–14 (E.D.Pa.1995)

▬ Even if the policies underlying exhaustion would be furthered in a particular case, the court will not require exhaustion where 1) the administrative remedy is inadequate because it does not exist, would not provide relief commensurate with the claim, or would unreasonably delay the action; or 2) the claim will clearly be denied or, as in a constitutional attack on the administrative scheme, administrative action will not resolve the merits of the claim. *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1556 (11th Cir.1985); *see also Rogers v. Bennett*, 873 F.2d 1387, 1393 (11th Cir.1989).

In his brief, Holton argues that he is not required to exhaust his administrative remedies because doing so would be futile and because the Defendants clearly violated his statutory rights. Plaintiff's Brief in Response at page 2. Holton has not stated why it would be futile for him to pursue his administrative remedy and the court cannot infer from either his Complaint or his brief any basis for his argument.[5] Establishing a procedure and a forum for resolving unpaid claims is precisely the purpose behind the administrative remedy described in the CHAMPUS regulations. *See* 32 C.F.R. § 199.10(a). Holton's second argument also fails because he has alleged that his right to payment has been breached; he has not pointed to any violation of a statutory or constitutional right.

---

5. Although Holton has not advanced this argument, the court is aware that there are time limits which govern the administrative remedies available to him. The court cannot find that such time limits provide a basis for finding futility because all plaintiffs could avoid exhaustion by simply waiting until the admin-

istrative remedy time lines had passed, frustrating the policies behind exhaustion of administrative remedies. In addition, there is a provision in the regulations which allows for a person to request an exception to the timing requirements. *See* 32 C.F.R. § 199.10(a)(5).

Accordingly, Holton's contract claim is due to be dismissed without prejudice in order to allow him to pursue his administrative remedies.

### 2. Tort Claims

### a. Sovereign Immunity

Holton also seeks to hold Blue Cross and Blue Shield liable for separate fraud and conspiracy to defraud claims. Blue Cross and Blue Shield argues that its status as a fiscal intermediary is sufficient to afford it sovereign immunity as to all of Holton's claims. In support of this argument, Blue Cross and Blue Shield cites this court to *Neurological Associates–H. Hooshmand, M.D., P.A. v. Bowen,* 658 F.Supp. 468 (S.D.Fla.1987). The court does not find that binding precedent sweeps as broadly as Blue Cross and Blue Shield has argued, however.

There is some language in a decision of the former Fifth Circuit which suggests that sovereign immunity for fiscal intermediaries includes tort claims regardless of the basis for liability. *See Peterson v. Weinberger,* 508 F.2d 45, 51 (5th Cir.1975)(stating that the corporate defendants were entitled to sovereign immunity from tort claims because they were Medicare fiscal intermediaries who act as agents at the sole direction of the Secretary of Health, Education and Welfare). The former Fifth Circuit's discussion must be viewed, however, in light of the court's finding that "[t]he corporate defendants, as fiscal intermediaries, did no more than act on the instructions received by them." *Id.* at 50. In other words, the former Fifth Circuit applied immunity for a tort claim within the context of a case in which it had already determined that the fiscal intermediary was acting in accordance with its instructions from the government.

This court finds that the interpretation by two federal district courts of this binding precedent is the better reasoned view than the interpretation proposed by Blue Cross and Blue Shield, which is essentially that fiscal intermediaries have absolute immunity. *See Livingston v. Blue Cross and Blue Shield of Alabama,* 788 F.Supp. 545 (S.D.Ala.1992), *aff'd without op.,* 996 F.2d 314 (11th Cir.), *reh'g en banc denied,* 7 F.3d 242 (11th Cir.1993); *Brooks v. Blue Cross and Blue Shield of Florida,* No. 95–405–CIV–MARCUS, 1995 WL 931702 (September 22, 1995).

In *Livingston,* the court interpreted binding case law and stated that it did not read those cases "to extend blanket immunity to Medicare fiscal intermediaries. Rather, a more logical interpretation is that the fiscal intermediary is entitled to sovereign immunity to the extent that the government is exposed to financial risk." *Id.* at 547. Although *Livingston* was decided within the context of a Medicare fiscal intermediary, the court finds no significant distinction from a CHAMPUS fiscal intermediary and that the same analysis should apply to a CHAMPUS fiscal intermediary. The *Livingston* court's focus on whether the government is exposed to financial risk is in line with the general approach to analyzing sovereign immunity which is to examine "the nature of the relief which may be provided." *Panola Land Buyers Assoc. v. Shuman,* 762 F.2d 1550, 1555 (11th Cir.1985).

Another district court in this circuit has applied this analysis and has found that a fiscal intermediary was not entitled to sovereign immunity on a fraud claim. The court's decision was affirmed by the Eleventh Circuit in a per curiam opinion in which the Eleventh Circuit attached the district court's opinion as an appendix and stated that it based the affirmance upon the holding and rationale contained in one part of the opinion, and expressed no view as to the rest of the opinion. *See Brooks v. Blue Cross and Blue Shield of Florida,* 116 F.3d 1364 (11th Cir.1997). The district court's opinion in *Brooks* addressed the plaintiff's argument that the defendant was not entitled to sovereign immunity because the claims were based on actions exceeding Blue Cross and Blue Shield's authority to act on the government's be-

half. *Id.* at 1382. The court stated that it agreed with this argument to the extent that the plaintiffs had pled injury based on fraudulent conduct. *Id.* The court concluded that because the conduct was not within what the government had agreed to indemnify, the basis for sovereign immunity was eliminated since the government would not have to pay the judgment. *Id.*

In this case, there is no allegation or evidence of an indemnity agreement, so the court need not decide whether or not an indemnity agreement is determinative of sovereign immunity, as at least one district court in Alabama has held. *See Livingston,* 788 F.Supp. at 547; *but see Rochester Methodist Hospital v. Travelers Ins. Co.,* 728 F.2d 1006 (8th Cir.1984)(indemnity agreement does not create sovereign immunity). Instead, this court must address whether the government is the real party in interest because it would have to pay a judgment against Blue Cross and Blue Shield.

 Under general principles of agency law, Blue Cross and Blue Shield would be liable for its own wrongful acts outside the scope of its authority. The former Fifth Circuit implicitly recognized the applicability of this general principle to fiscal intermediaries in *Matranga v. Travelers Ins. Co.,* 563 F.2d 677, 677–78 (5th Cir. 1977). There, the court extended sovereign immunity to Travelers Insurance Company as a fiscal intermediary, stating, "Travelers was acting under the direction of the Secretary of Health, Education and Welfare and there is nothing in the record to indicate that Travelers was acting outside the perimeters of its official duties in its dealings with Dr. Matranga." *Id.* Such language suggests that, had there been evidence in the record indicating that Travelers was acting outside the perimeters of its official duties, the fiscal intermediary would not have been entitled to sovereign immunity.

 Blue Cross and Blue Shield has argued, citing *Bowen,* that to conduct an inquiry into whether the defendant was acting within the scope of its authority is to confuse sovereign and official immunity. This court does not agree, however, and finds that the line drawn by the court in *Livingston* between sovereign and official immunity is more persuasive. As the *Livingston* court explained, sovereign immunity bars all suits, even suits alleging tortious conduct, if the suit is an unconsented suit against the sovereign. *Livingston,* 788 F.Supp. at 548. The key is whether the government is exposed to financial risk. *Id.* Under this rule, the court is not seeking to determine whether the defendant acted within the scope of its duties to determine whether or not immunity applies, but to determine whether or not the United States will ultimately have to pay a judgment, which in turn determines whether or not immunity applies. In other words, the court does not find that there is a bright line rule that the agency relationship determines applicability of immunity, but rather that the agency relationship determines whether the government is in fact the party which will have to pay the judgment.

In this case, Blue Cross and Blue Shield has claimed that the United States is the real party in interest in the context of a Motion to Dismiss. This court lacks the factual development which existed when the former Fifth Circuit made its ruling in *Peterson.* The court is simply unable to tell at this point in the proceedings whether or not a judgment which might be rendered on the fraud or conspiracy to defraud claims in this case would or would not ultimately be paid by the government. Accordingly, the court finds that Blue Cross and Blue Shield is not entitled to sovereign immunity on this claim.

b. Exhaustion of Administrative Remedies

It appears that Blue Cross and Blue Shield intends to argue that Holton's tort claims are also subject to the exhaustion of administrative remedies requirement. Federal courts have found where an agen-

cy does not have the power to provide the remedy sought, then jurisdiction cannot exist exclusively in that body. *See Penny v. Southwestern Bell Telephone Co.*, 906 F.2d 183 (5th Cir.1990). In *Golden v. Employers Insurance of Wausau*, 981 F.Supp. 467 (S.D.Tex.1997), the court determined that a state agency only had the authority to decide if a plaintiff's coverage claims had merit, and then to recommend and eventually order payment of the claims if they do have merit. The court explained that because the agency had no power to adjudicate the plaintiff's other claims, including fraud, the doctrine of exhaustion of remedies did not apply. *Id.* at 473.

 In this case, the parties have not briefed what remedies would be available to Holton were he to pursue his administrative remedies. The court is aware of a regulation, however, which requires, at least as to the appeals process under CHAMPUS, that there be an amount in dispute which is defined as "the amount of money CHAMPUS would pay if the services and supplies involved in the dispute were determined to be authorized CHAMPUS benefits." 32 C.F.R. § 199.10(a)(7)(i). This definition does not appear to include the kind of damages Holton seeks as a remedy for fraud and conspiracy to defraud, including punitive damages. Accordingly, the court finds that exhaustion of remedies is not required for Holton's tort claims.

### c. Failure to Adequately Plead/State a Claim for Fraud

Blue Cross and Blue Shield argues that Holton has failed to meet the requirements of Federal Rule of Civil Procedure 9(b) in stating his fraud claims, and that the allegations he has made do not state a claim for fraud under Federal Rule of Civil Procedure 12(b)(6).

 In his Complaint, Holton brings fraud claims based on misrepresentation and suppression. Both types of claims require that the plaintiff establish reliance on the misrepresentation/suppression. *See Foremost Ins. Co. v. Parham*, 693 So.2d 409, 423 (Ala.1997)(misrepresentation); *Wolff v. Allstate Life Ins. Co.*, 985 F.2d 1524 (11th Cir.1993)(citing *Hardy v. Blue Cross & Blue Shield*, 585 So.2d 29 (Ala.1991))(suppression).

 In all of his misrepresentation/suppression claims, Holton refers to the same paragraph in the Complaint. This paragraph states that he was injured because he has provided counseling services to the Defendants' insureds without being paid; he must continue to treat those insureds without being paid under the Counseling Code of Ethics; he has lost interest on the money he should have been paid; and he has suffered mental anguish and distress. Complaint at ¶ 25.

The facts as set forth by Holton in the Complaint, however, are that he treated the Defendants' insureds, and then the alleged misrepresentations/suppression occurred. Because Holton had already treated the Defendants' insureds, and because he was required to continue to do so, as stated in his own Complaint, Holton has failed to plead facts which would support a finding of reliance or inducement to act based on misrepresentations or suppressions which occurred subsequent to his treatment decision. Therefore, this court agrees with Blue Cross and Blue Shield that Holton has failed to state a fraud claim for which relief may be granted.

 Holton has also pled a conspiracy to defraud claim. Where civil liability for a conspiracy is sought to be enforced, the conspiracy itself furnishes no cause of action; rather, the gist of the action is not the conspiracy alleged but the wrong committed. *McLemore v. Ford Motor Co.*, 628 So.2d 548, 550 (Ala.1993) (citations omitted). Because this court has concluded that there are no facts which could be proven consistently with the allegations of the Complaint to state a claim for fraud, the court similarly concludes that Holton

has failed to state a claim for conspiracy to defraud.

### IV. *CONCLUSION*

For the reasons discussed, Blue Cross and Blue Shield's Motion to Dismiss is due to be GRANTED and Holton's contract claim against Blue Cross and Blue Shield is due to be DISMISSED without prejudice, while his tort claims are due to be DISMISSED with prejudice.