**ALL STAR SHEET METAL AND ROOFING, INC., Appellant,**

v.

**TEXAS DEPARTMENT OF INSURANCE; Texas Commissioner of Insurance; and Texas Workers' Compensation Insurance Facility, Appellees.**

No. 03–96–00156–CV.

Court of Appeals of Texas, Austin.

Nov. 20, 1996.

Rehearing Overruled Jan. 9, 1997.

Mahon B. Garry, Jr., Wright & Greenhill, Austin, for Appellant.

Dan Morales, Attorney General, Doreen L. Wheeler, Assistant Attorney General, Financial Litigation Division, Austin, for Texas Department of Ins. and Texas Commissioner of Ins.

James D. Jameson, Round Rock, for Texas Workers' Compensation.

Before POWERS, ABOUSSIE and JONES, JJ.

POWERS, Justice.

All Star Sheet Metal and Roofing, Inc., sued the Department of Insurance, the Texas Commissioner of Insurance,[1] and the Texas Workers' Compensation Insurance Facility for judicial review of a final order issued by the Commissioner in a contested case. *See* Tex. Ins.Code Ann. art. 5.76–2 § 2.08 (West Supp.1996). All Star appeals from the district-court judgment affirming the order. We will affirm the order and the district-court judgment.

## THE CONTROVERSY

■ Under the workers' compensation statute, an employee may waive the coverage afforded by those statutes, and retain his or her common law causes of action, provided the employee so notifies "the employer not later than the fifth day after the date on which the employee ... begins the employment." *See* Tex. Labor Code Ann. § 406.034(b) (West 1996). The employee loses after the fifth day the right of waiver.

*See Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 532 (Tex.1995).

■ The Facility provided workers' compensation insurance for All Star's employees and contracted with Wausau Insurance Company to act as servicing carrier for the policy.[2] In January 1991, Wausau predicted a large increase in All Star's premiums. All Star believed the amount of the increase threatened its survival as a going concern. Wishing to give its employees an opportunity to begin anew their employment and to waive workers' compensation coverage under the changed circumstance, All Star discharged all its employees (except the president and the secretary-treasurer) and invited them to return the following Monday. They did so. All Star hired them all again and all, save one, waived workers' compensation coverage within the five-day period fixed by section 406.034(b). All Star's premiums were not thereafter calculated to include the employees who purportedly waived coverage.

In late 1992, Wausau informed All Star that its premiums for policy year 1992–93 would be calculated on a basis that denied legal effect to the purported discharges and waivers, and that Wausau would not renew the policy if All Star failed to pay the increased premiums. All Star complained without success to the Facility's Governing Committee, then initiated a contested-case proceeding before the Commissioner. *See* Tex. Ins.Code Ann. art. 5.76–2, § 2.08(a). The ultimate issue before the Commissioner was the good-faith of the risk as proposed by

1. The duties of the former State Board of Insurance are now performed by the Commissioner of Insurance or the Texas Department of Insurance consistent with their respective powers and duties set forth in the Insurance Code. *See* Tex. Ins.Code Ann. arts. 1.01A, .02 (West Supp.1996); *see also* Act of May 27, 1991, 72d Leg., R.S., ch. 242, § 13.01, 1991 Tex. Gen. Laws 939, 1133. For convenience we will use the word "Commissioner" to refer to both the Commissioner of Insurance and the State Board of Insurance.

2. The Texas Workers' Compensation Insurance Facility is a private, non-profit, unincorporated association of insurers authorized to write workers' compensation insurance in Texas for employers who are unable to obtain coverage through private insurance companies. The Facility must provide insurance coverage under the statutory scheme for any "risk" that appears to

be "in good faith entitled to insurance." Tex. Ins.Code Ann. art. 5.76–2, § 4.02(b) (West Supp. 1996). Once the Facility determines a company is entitled to coverage, it "calculate[s] the deposit premium" in accordance with classifications and rates promulgated by the Commissioner. *Id.* Then the Facility contracts with an independent insurer to become a servicing carrier for the Facility. A servicing carrier issues and services insurance policies on behalf of the Facility, including auditing and collecting premiums. The pool and not the servicing company is the insurer. *See Maintenance v. ITT Hartford Group, Inc.,* 895 S.W.2d 816, 818 (Tex.App.—Texarkana 1995, writ denied). The servicing company is simply an agent that issues a policy for the pool; the servicing company is not liable as an insurer but only as a reinsurer. *Id.*

All Star. *See* Tex. Ins.Code Ann. art. 5.76–2, § 4.02(b). After an evidentiary hearing, an administrative law judge issued a proposal for decision concluding the waivers were not genuine and the premiums for All Star's renewal policy should be calculated accordingly. The Commissioner issued an order adopting the proposal for decision. In All Star's suit for judicial review, the court below affirmed the order and this appeal ensued.

The scope of our review is limited to that specified in the Administrative Procedure Act for judicial review under the "substantial evidence rule." *See* Tex. Gov't Code Ann. § 2001.174 (West 1995) (the "APA").[3]

## DISCUSSION AND HOLDINGS

In three points of error, All Star contends the body of evidence does not reasonably support the Commissioner's findings of fact and these findings do not, in turn, support the Commissioner's conclusions of law. *See* APA § 2001.174(2)(E) and (F).[4]

In conclusion of law three, the Commissioner determined that All Star's actions in affording its employees a new opportunity to waive workers' compensation insurance coverage did not amount to a new beginning of

employment within the meaning of section 406.034(b) of the Texas Labor Code. In conclusion of law four, the Commissioner determined that All Star must pay premiums on those employees who began their employment before January 11, 1991, and also executed the purported waivers of worker's compensation insurance coverage. In support of these conclusions of law, the Commissioner's order sets out findings of fact pertaining to All Star's purported discharge and rehiring of its nine employees.[5] We believe the findings of fact reasonably support the Commissioner's conclusions of law three and four regarding the legitimacy of the discharges, rehirings, and resulting waivers.

All Star argues the findings of fact cannot support conclusion of law three because the findings literally and specifically state the employees *were* "laid off" and subsequently "rehired." We do not conceive that to be the intended meaning of the Commissioners' final order. Agency orders should be construed to ascertain and give effect to the intent reflected therein. *Airport Coach Serv., Inc. v. City of Fort Worth*, 518 S.W.2d 566, 574 (Tex.Civ.App.—Tyler

---

3. The administrative actions in the present case occurred both before and after September 1, 1993, and are therefore governed by both the Administrative Procedure and Texas Register Act ("APTRA") and the Administrative Procedure Act. *See* APTRA, 64th Leg., R.S., ch. 61 § 19, 1975 Tex. Gen. Laws 136, 136–148 (Tex.Rev.Civ. Stat. Ann. art. 6256–13a, § 19, since repealed and codified at Tex. Gov't Code Ann. § 2001.001 *et seq.* ("APA")). Because the codification of the APA effective September 1, 1993, had no substantive effect on the relevant provisions, we cite the Texas Government Code for convenience.

4. We have for brevity paraphrased the findings of fact and conclusions of law.

5. Findings of Fact Four and Five are as follows:
    4. On January 11, 1991, Mr. Hicks called a meeting at which the employees were informed that for the company to survive they would all have to be "laid off" that afternoon. The employees could, however return the following Monday to be "rehired." If rehired, the employees could decline workers' compensation insurance and be covered instead by other insurance provided by All Star.
    5. All Star "laid off" the employees in question on January 11th, 1991.

a. All Star did not notify its contractors of the "lay offs."
b. The discharged employees were made assistant vice presidents on January 11th, but received no increased benefits or power from the promotion.
c. The "laid off" employees were rehired on January 14th with the same job descriptions. Only one employee did not reject coverage. The alternate insurance policy became effective January 14th.
d. The "laid off" employees all: (1) had worked for All Star for a number of years; (2) were laid off, but were not very worried about having their jobs on Monday; (3) made their insurance choices individually and were happy to make the change.
e. The "laid off" employees received their regular paychecks, but did not receive any accrued benefits. Contrary to customary practice, no final termination papers were put into the "laid off" employees' files. No documents reflected the rehiring on January 14th, e.g., W–4 forms.
f. Mr. Hicks and the secretary-treasurer believed the employees had to be laid off before the employees could waive workers' compensation insurance.

1974, writ ref'd n.r.e.). In pursuit of that intent, administrative orders, like statutes, should be given a reasonable and harmonious construction of the whole. *See City of Coahoma v. Public Util. Comm'n,* 626 S.W.2d 488, 490–91 (Tex.1981); *see also* Tex. Gov't Code Ann. § 311.021 (West 1988).

While finding of fact five does state the employees in question were "laid off" and "rehired," when read in context it is quite evident the Commissioner used these words as a shorthand summary of All Star's own characterization of its actions. Under finding of fact five, subfindings (a) through (f) establish that All Star's purported discharges and rehirings were merely colorable. To conclude that the Commissioner found the employees were in reality "laid off" and "rehired" is an unreasonable interpretation of the order because it would render meaningless the accompanying subfindings and conclusions of law. We hold the findings of fact reasonably support conclusion of law three and that part of conclusion of law four pertaining to the legitimacy of the discharges, rehirings, and resulting waivers.

We turn next to All Star's contention that the body of evidence does not reasonably support the Commissioner's findings of fact.

The body of evidence contains the testimony of thirteen individuals who were either officers or employees of All Star. Their testimony conflicts on whether the president intended the discharges to be real and whether the employees in fact believed they were real. For example, the president, Mr. Hicks, stated: "I don't think any of them have been fired," but later testified that one employee was terminated "to comply with the law to reject the [workers' compensation] Act. . . ." In another instance, Marla Black testified she understood she was to be discharged by All Star, but she also understood she "would be rehired right away, so it didn't bother [her] one way or the other." Roger Blassingame testified he "wasn't going to be terminated" but merely "had to quit just over the weekend." Much evidence is undisputed including, for example, the absence of documentation that might reasonably be expected had the discharges and rehirings been genuine.

■ The meaning, weight, and credibility assigned various parts of the evidence and their orchestration in light of all the evidence were matters for the Commissioner to determine; we are forbidden to make those assessments and are limited to the issue of whether the agency record as a whole demonstrates that the Commissioner's assessments were unreasonable. *See* APA § 2001.174(2); *Auto Convoy Co. v. Railroad Comm'n,* 507 S.W.2d 718, 722 (Tex.1974). Because the agency record does not demonstrate such unreasonableness, we overrule All Star's points of error.

In a cross-point, the Facility contends All Star's appeal was brought without sufficient cause and for the purpose of delay. We disagree. All Star showed an arguable basis to attack the Commissioner's order and the trial-court judgment and, therefore, did not bring the appeal without sufficient cause. *See* Tex.R.App. P. 84. We overrule the Facility's cross-point.

We affirm the Commissioner's order and the district-court judgment.