Sabrina **GOLDEN**

v.

**EMPLOYERS INSURANCE OF WAUSAU.**

No. Civ.A. G–96–467.

United States District Court,
S.D. Texas,
Galveston Division.

Oct. 23, 1997.

Fritz Barnett, Barnett and Craddock, Houston, TX, for Plaintiff.

Gary E. Hill, Houston, TX, Michael Phillips, Phillips and Akers, Houston, TX, for Defendant.

## ORDER

KENT, District Judge.

Plaintiff commenced this action in Galveston County state court on July 18, 1996, and it was timely removed to this Court on August 22, 1996. Now before the Court is Defendant's Motion to Dismiss and Defendant's Motion to Stay. For the reasons set forth below, Defendant's Motion to Dismiss is partially **GRANTED,** and Plaintiff's claim alleging breach of the common-law duty of good faith and fair dealing is **DISMISSED WITH PREJUDICE.** Moreover, Defendant's Motion to Stay is **GRANTED** and the remainder of this case is temporarily **STAYED** and **ADMINISTRATIVELY CLOSED,** pending resolution of administrative proceedings pursuant to the Texas Labor Code.

## I. FACTUAL SUMMARY

This case ultimately results from a horrific robbery. Plaintiff was working as a cashier for Evans Oil Company at the Little Chief Convenience Store in Dickinson, Texas on the night of July 7, 1991 when that store was robbed. Only Golden, her daughter, and the robber were in the store at the time of the robbery. During the robbery, the assailant grabbed Golden around her neck and held a knife to her throat. The robber also threatened to kill Golden's daughter if Golden did not cooperate. She did so. Despite her cooperation, Golden's neck was forcefully twisted by the robber and she was violently thrown about. After leaving the store with the money from the cash register, the thief was later apprehended by police. As a result of the robbery, Golden suffered superficial cuts, and injuries to her neck, shoulder, and arm. She also suffered continued crying spells and sleeplessness. Golden filed a workers' compensation claim for her injuries allegedly suffered that night.[1] She was

eventually diagnosed with post traumatic stress disorder, depression, anxiety with panic attacks, sleep disturbance, and panic disorder. Ongoing psychological therapy and treatment were recommended.

The Texas Workers' Compensation Insurance Facility ("Facility") was the insuring entity for Golden's Employer, Evans Oil Company, at the time Golden filed her workers' compensation claim. At that time, Defendant Employers Insurance of Wausau was the servicing company and agent for the Facility. Plaintiff alleges in her Complaint that Defendant has engaged in a scheme to unfairly and unreasonably deny her workers' compensation benefits. She contends that Defendant, on several occasions, denied coverage after giving pre-authorization for treatment, forcing her to pay for those treatments. Golden also asserts that her condition has steadily worsened and has been exasperated due to Defendant's wrongful refusal to provide funds for consistent treatment.

## II. ANALYSIS

In her Original Complaint, Plaintiff alleges breach of contract,[2] breach of the common-law duty of good faith and fair dealing pursuant to *Aranda v. Ins. Co. of North America,* 748 S.W.2d 210 (Tex.1988), violations of the Texas Insurance Code, TEX. INS.CODE ANN. arts. 21.21, 21.21–2, violation of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. COMM.CODE ANN. § 17.46 *et seq.,* and intentional infliction of emotional distress. In her Amended Complaint, she adds claims for negligence, gross negligence, breach of fiduciary duty, unfair settlement practices, negligent misrepresentation, and fraud.

### A. Jurisdictional Issues

### 1. Subject Matter Jurisdiction

 ▮ Defendant argues that this case should be dismissed because Plaintiff has failed to exhaust her administrative reme-

---

**1.** Three days before the robbery on July 4, 1991, Plaintiff had allegedly injured her shoulder while lifting cases in the store. She also filed a workers' compensation claim for this injury.

**2.** This is a non-sensical claim. Essentially, her claim is for denied benefits. No other "contract" is alleged to exist between the parties.

dies. The exhaustion of remedies doctrine precludes a party's access to the judicial system without first seeking administrative remedy. *See Johnson v. American Gen. Ins. Co.*, 464 S.W.2d 83, 84 (Tex.1971) (holding that failure to obtain an administrative ruling on a workers' compensation claim precluded utilization of the judicial system to resolve the dispute because prior to administrative review, a court lacks subject matter jurisdiction); *Hartford Accident & Indemnity Ins. Co. v. Choate*, 126 Tex. 368, 372, 89 S.W.2d 205, 207 (1936) ("The district court has no jurisdiction to determine a claim for compensation arising under the Workmen's Compensation Act until and unless the Industrial Accident Board has first passed upon such claim."). Because this argument involves jurisdictional issues, the Court addresses it first. *See Silver Star Enters., Inc. v. M/V Saramacca*, 19 F.3d 1008, 1013 n. 6 (5th Cir.1994) (declaring that jurisdictional challenges must be addressed upon suggestion).

This case presents the troublesome problem of accommodating the purposes of the high–risk workers' compensation administrative scheme without closing the courts to plaintiffs who have common—law or extra–contractual claims arising out of grievances against the Facility or its agent servicing companies. The core of Plaintiff's Complaint is that Defendant wrongfully denied her workers' compensation claim. In its Motion to Dismiss, Defendant cites as authority § 410.251 of the Texas Labor Code, which provides that a party must exhaust his ad-ministrative remedies before he can seek judicial review of a coverage issue. *See* TEX. LAB.CODE ANN. § 410.251 (Vernon 1997). Defendant, therefore, argues that the Court must dismiss Plaintiff's claims until Plaintiff has exhausted these remedies provided in the Labor Code.[3] Assuming one exists, Plaintiff does not deny that she has failed to exhaust her administrative remedy. The Court is unconvinced that it must dismiss this case pending administrative appeal. Instead, the Court finds that the administrative remedy available to Plaintiff is insufficient to resolve Plaintiff's causes of action, and therefore, does not prevent this Court from exercising original jurisdiction over the majority of the claims alleged in this case.

■ At the outset, assuming any such administrative provision is applicable, the Court must determine what administrative remedy governs Plaintiff's claims. The Court notes that both parties argue their positions while citing as authority provisions found within both the Texas Labor Code and the Texas Insurance Code. Indeed, Plaintiff goes so far as to *ask the Court* which administrative remedies found in these Codes applies. After a careful review of the administrative remedies found in both Codes, the Court is convinced that the procedures outlined in the Texas Labor Code are more appropriate for resolution of Plaintiff's coverage claims.

The Court, however, understands arguments to the contrary. The policy in ques-

---

**3.** The Court is deeply concerned about the markedly questionable quality of the documents submitted by Defendant. In one instance, Defendant argues that Plaintiff has failed to exhaust her remedies under the Labor Code, but then cites as authority cases pertaining to the Insurance Code. Throughout its Motion, Defendant makes no distinction between those cases decided under the Insurance Code and the Labor Code, failing to explain which applies in this case. Moreover, after arguing that it is not an insurance carrier, Defendant then argues that the Labor Code precludes bad faith actions against insurance carriers and therefore it is not liable. Defendant also misstates the language of the Labor Code, which clearly states that bad faith actions are precluded when a carrier acts pursuant to the recommendations of a benefit review officer or an order from the TWCC. *See* TEX. LAB.CODE ANN. § 416.001 (Vernon 1997). Most disconcerting to the Court is Defendant's clear misstatement of case authority. On at least two occasions in its Motion to Dismiss, Defendant takes language from controlling cases out of context, citing such language as authority for its argument, when in fact the case stands for the opposite proposition. Defendant's counsel is advised that this Court did not recently fall off the turnip truck. The Court carefully reviews all documents submitted. At this point, the Court is unsure whether counsel simply gave these cases a cursory, reading, or whether counsel's skewed interpretation of these cases was an attempt to deceive the Court. Giving Defendant's counsel the benefit of the doubt, counsel is warned that duplicity will not be tolerated in this Court. Indeed, such misdirection and deception will be dealt with **HARSHLY. Counsel is instructed in the future to read the cases cited as authority carefully and to state the holdings of these cases accurately, or suffer severe consequences.**

tion in this case was issued by the Facility to Plaintiff's employer. Defendant was acting as the servicing company for the Facility on that policy of insurance. Because the Defendant servicing company was acting as an *agent* for the Facility, any decision made by Defendant regarding coverage was a decision on behalf of the Facility. Thus, though not presented this way in either party's brief, it could be argued quite persuasively that the provisions within the Texas Insurance Code regarding Facility decisions applies in this case. Article 5.76–2, § 2.08 of the Texas Insurance Code provides: "An applicant for insurance, an insured, or an insurer aggrieved by an *act* or *decision* of the facility may appeal to the board not later than the 30th day after the affected party had actual notice that the act occurred or the decision was made." TEX. INS.CODE ANN. art. 5–76, § 2.08(a) (Vernon 1997) (emphasis. added).[4] Certainly, Defendant's denial of coverage, acting as the Facility's agent, is an "act" or "decision" within the purview of § 2.08. Apparently many courts addressing this issue assume that provisions of the Texas Insurance Code control. *See, e.g., Northwinds Abatement, Inc. v. Employers Ins. of Wausau,* 69 F.3d 1304, 1310 (5th Cir.1995) (holding that § 2.08 did not provide an adequate remedy for an aggrieved *employer* ) *Storebrand Ins. Co. v. Employer's Ins. of Wausau,* 974 F.Supp. 1005, 1008–09 (S.D.Tex.1997) (rejecting the defendant's argument that § 2.08 prevented judicial review of a suit against the servicing company); *Metro Temps v. Workers' Comp. Ins. Fac.,* 949 S.W.2d 534, 535–36 (Tex.App.—Austin 1997, no writ) (holding that an *employer* must exhaust his administrative remedy under § 2.08 before proceeding in a judicial forum); *Producers Assistance Corp. v. Employers Ins. of Wausau,* 934 S.W.2d 796, 799 (Tex.App.— Houston [1st Dist.] 1996, no writ) (interpreting article 5.76 of the Texas Insurance Code and holding that an *employer* must first present his claims to the Texas Board of Insurance in the administrative appeals process before seeking judicial review).

Although Plaintiff argues otherwise, the Court finds today that Plaintiff indeed has an administrative remedy; however, that administrative remedy falls within the auspices of the Texas Labor Code and the Texas Administrative Code, *not* the Texas Insurance Code. In this case, unlike the cases cited by both parties in their briefs and the cases cited above, the dispute is between an agent of the insurance carrier and an *employee,* not an *employer.* In that regard, the Texas Labor Code specifically provides for a "benefit review conference" intended to mediate and resolve compensation disputes arising from on-the-job injuries. *See* TEX. LAB.CODE ANN. § 410.021 (Vernon 1997) ("A benefit review conference is a nonadversarial, informal dispute resolution proceeding . . . ."). According to the Texas Labor Code, following an unsuccessful benefit review conference, only then can a workers' compensation claimant seek a "contested case hearing." *See id.* § 410.023. At the more formal contested case hearing, the hearing officer receives evidence in order to develop the facts of the controversy. *See id.* § 410.163. The hearing officer then issues a written decision, which includes findings of fact and conclusions of law, a determination of whether benefits are due, and an award of such benefits, if due. *See id.* § 410.168. An unsuccessful claimant then has fifteen days in which to appeal this decision;[5] such appeal is heard before an appeals panel made up of three licensed attorneys, which is the first time someone formally trained in the law is required by statute to hear the dispute. *See id.* §§ 410.201, 410.169. After the appeals panel has issued a written ruling, then, and only then, can the employee seek judicial review. *See id.* § 410.215.

The Texas Administrative Code also provides a remedy for a workers' compensation claimant when the dispute involves denial of authorization of medical services that require pre–authorization. *See* TEX. ADMIN. CODE ANN. title 28 § 133.305 (Vernon 1997). This

---

**4.** This time would appear to have long since passed, unless tolled for some reason. The Court does not address such issue here, but Plaintiff will have to address it in pursuit of applicable administrative remedies.

**5.** *See supra* note 4.

provision requires a claimant to submit his coverage dispute to the TWCC at the division of medical review in Austin; such submission must not be made later than one year after the date of the rendering of the service in dispute.[6] *See id.* If unsuccessful there, the claimant can then seek a benefit review conference and the aid of other procedures which parallel those procedures described above and found in the Labor Code. *See id.* §§ 142.1–145.22 (Vernon 1997).

█ It is well–established that the power to award compensation benefits rests solely in the TWCC, subject to judicial review. *See Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607, 612 (Tex.1996); *Brannon v. Pacific Emp. Ins. Co.,* 148 Tex. 289, 292, 224 S.W.2d 466, 468 (1949); *Traders & General Ins. Co. v. Bailey,* 127 Tex. 322, 324, 94 S.W.2d 134, 135 (1936); *Commercial Cas. Ins. Co. v. Hilton,* 126 Tex. 497, 501–02, 87 S.W.2d 1081, 1083 (1935); *see also* TEX. LAB. CODE ANN. §§ 408.001, 410.168–.169, 410.203–.205, 410.208 (Vernon 1997). Although the Texas Legislature has established a procedure by which an aggrieved claimant can seek review by the TWCC of denied medical and income compensation for on–the–job injuries, they have not vested the TWCC with the authority to adjudicate tort and contract claims or to award punitive damages. *Cf. Northwinds,* 69 F.3d at 1310.[7] Because of this inadequacy, the Court holds today that the TWCC cannot provide Plaintiff a full and complete remedy for all of her claims; therefore, the exhaustion of remedies doctrine does not apply. As an initial matter, the Court notes that the law in Texas regarding the exhaustion of remedies doctrine is currently in a state of flux. The Fifth Circuit, however, has provided helpful authority in the *Northwinds* case, wherein the Fifth Circuit held that the exhaustion of remedies doctrine did not apply in a case involving extra–contractual common-law and statutory tort claims brought against an insurance company member of the Facility. 69 F.3d at

1310–11 (1995). In that case, Northwinds Abatement, Inc., an *employer,* sued the servicing company that issued its insurance contract alleging, *inter alia,* bad faith, DTPA violations, breach of fiduciary duty, negligence, and gross negligence. *See id.* at 1306. Relying on *Penny v. Southwestern Bell Tel. Co.,* 906 F.2d 183 (5th Cir.1990), the *Northwinds* court held that neither the Facility, the State Board of Insurance ("Board"), nor the TWCC had the authority to adjudicate the common–law and statutory tort actions alleged, and none of those entities had the authority to award damages for these claims. *See Northwinds,* 69 F.3d at 1310–11. Thus, according to the Fifth Circuit, those extra–contractual causes of action could not be dismissed pursuant to the exhaustion of remedies doctrine, but were instead properly within the jurisdiction of the District Court. Instead of dismissing the case, the *Northwinds* court exercised the primary jurisdiction doctrine, and abated the case until the merits of the underlying insurance claims could be resolved. *See id.* at 1311.

█ Although the facts in this case are not similar, the Court finds the *Northwinds* reasoning persuasive. In this case, Plaintiff alleges that Defendant's failure to pay her workers' compensation claims caused her to suffer needlessly without treatment, and indeed has worsened her condition. Again, any "breach of contract" claim is subsumed by this contention. Plaintiff also alleges that Defendant's actions actually caused her independent psychological and emotional damage. She not only seeks payment of her medical bills, but also seeks damages caused by Defendant's failure to pay these bills. Plaintiff also seeks punitive damages. Under Texas's Administrative and Labor Codes, the most relief that the TWCC could provide Plaintiff would be to find that her workers' compensation claims should have been paid and to award the actual benefits due. *See* TEX. LAB.CODE ANN. § 410.168, TEX. ADMIN. CODE ANN. title 28 § 142.16 (Vernon 1997). The

---

**6.** *See supra* note 4.

**7.** Moreover, § 2.08, the general grievance procedure within the Insurance Code, only provides that the Board will "affirm, reverse, or modify the act of the facility that is the subject of appeal

to the board." TEX INS.CODE ANN. § 2.08. Thus, even if this provision applied in the present case, which it does not, the Texas Board of Insurance, like the TWCC, lacks the authority to provide the remedy that Plaintiff seeks.

Court finds that such relief does not compensate Plaintiff for the alleged damages she suffered as a *consequence* of the denial of her claims. *Cf. Northwinds*, 69 F.3d at 1310. "The Board and the Commission can only remedy acts of the Facility, not the consequence of those acts." *Northwinds*, 69 F.3d at 1310; *see Escajeda v. Cigna Ins. Co. of Texas*, 934 S.W.2d 402, 407 (Tex.App.—Amarillo 1996, writ denied) ("If the relief serves to recompense the wrong or injury which [is addressed by the TWCC], then the [Workers' Compensation] Act controls their recovery. But, if it serves to recompense some wrong *independent* of the original injury compensable under the Act (e.g., the injury arising from the fraud or bad faith in *Saenz*), then the Act and its restrictions are inapplicable." (emphasis added)).

The TWCC, therefore, has no power to adjudicate Plaintiff's claims alleging violations of the Texas Insurance Code, violations of the DTPA, intentional infliction of emotional distress, negligence, gross negligence, breach of fiduciary duty, unfair settlement practices, negligent misrepresentation, and fraud. Instead, by the plain reading of the relevant Codes, TWCC's only function in the dispute procedure is to determine whether Plaintiff's coverage claims have merit, and if they do, to recommend and eventually order payment of those claims in the first instance. *Cf. Penny*, 906 F.2d at 186 (declaring that where an agency "has no power to provide the remedy sought, then, exclusive jurisdiction cannot rest in that body."). Thus, the doctrine of exhaustion of remedies does not apply in the case at bar because the TWCC does not have the power to award Plaintiff the remedies she seeks, nor does it have the expertise to consider Plaintiff's extra–contractual claims. Because the procedures outlined in the Texas Labor and Administrative

Codes do not afford Plaintiff the full remedy she seeks, the Court has original jurisdiction over all but Plaintiff's breach of contract claim.[8]

Although Texas law on point is scarce, the Court notes that at least two Texas appeals court have held, following the *Northwinds* decision, that extra–contractual claims are subject to the administrative appeals process and must be dismissed because the court lacks subject matter jurisdiction until the plaintiff has exhausted his administrative remedy. *See Producers Assistance Corp.*, 934 S.W.2d at 801; *Metro Temps*, 949 S.W.2d at 536. Expressly noting that the Texas Supreme Court has not yet addressed this issue, this Court respectfully disagrees with these cases. *See Storebrand*, 974 F.Supp. at 1008–09 (holding that the administrative appeals process was inadequate to resolve extra–contractual claims). Other Texas appeals courts have held similar to the holding this Court reaches today. *See, e.g., Montgomery v. Blue Cross & Blue Shield*, 923 S.W.2d 147, 151 (Tex.App.—Austin 1996, no writ) (holding that exhaustion is not required because the administrative system was not authorized to adjudicate the extra–contractual claims); *Rowden v. Texas Catastrophe Property Ins. Ass'n*, 677 S.W.2d 83, 84 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); *Texas Catastrophe Property Ins. Ass'n v. Miller*, 625 S.W.2d 343 (Tex.App.—Houston [14th Dist.] 1981, writ dism'd w.o.j.).

■ Enforcing exhaustion of all claims arising from a workers' compensation grievance under the administrative system in not the best way to uphold the legislative purposes of the TWCC. Neither the Texas Labor Code, nor the Texas Administrative Code, provides that its remedies are exclusive of those provided by common law and by other statutes.[9] The Texas Legislature could

---

8. *See Saenz*, 925 S.W.2d at 612 (noting that although its findings are subject to judicial review, *only* the TWCC has the authority to determine workers' compensation benefits due an employee).

9. In Appendix "A" to Defendant's Motion for Dismissal, Defendant cites TEX. LAB.CODE ANN. § 408.001 as authority for the proposition that the administrative provisions within the Labor Code are the exclusive remedy for Plaintiff. The

most cursory reading of this statute reveals the unsoundness of this argument. Section 408.001 simply prevents an employee from suing his employer under certain circumstances; it does not prevent an employee's suit against an insurance company or servicing company. *See id.* When citing the statute, Defendant conveniently leaves out this critically important detail. Again, Defendant is admonished that the next time it misleadingly cites an applicable statute to this Court, it may expect **SEVERE** sanctions.

easily have written in such a provision had it intended such a result. *Cf. Montgomery*, 923 S.W.2d at 151. Furthermore, according to Texas law, agencies may only exercise those powers granted by statute, together with those necessarily implied from the statutory authority conferred or duties imposed. *See id.; see also City of Sherman v. Public Util. Comm'n*, 643 S.W.2d 681, 686 (Tex.1983); *Stauffer v. City of San Antonio*, 162 Tex. 13, 16, 344 S.W.2d 158, 160 (1961). The only authority granted to the TWCC relevant to this discussion is the power to determine the merits of a coverage claim once a dispute arises. *See Saenz*, 925 S.W.2d at 612. Moreover, this Court seriously questions the sagacity of forcing a claimant to present extra–contractual claims in an administrative forum before filing suit, especially when that forum clearly is not presently qualified, and was not designed, to resolve these claims.[10] Indeed, in *Saenz*, the Texas Supreme Court explicitly stated that the TWCC did not exist to provide remedy for fraud and bad faith actions. *See Saenz*, 925 S.W.2d at 612 (declaring that the TWCC's authority to determine compensation awards does not preclude a claimant's right to recover damages for fraud and bad faith, so long as those damages were not lost workers' compensation benefits). Thus, the Court has original jurisdiction over these extra–contractual claims, wholly independent of the administrative appeals process.

## 2. *Primary Jurisdiction Doctrine*

■ Having decided that the Court has subject matter jurisdiction over most of Plaintiff's claims, the Court next must determine whether application of the primary jurisdiction doctrine as outlined in *Penny* is appropriate in this case. The primary jurisdiction doctrine applies when:

(1) the court has original jurisdiction over the claim before it; (2) the adjudication of that claim requires the resolution of predicate issues or the making of preliminary findings; and (3) the [L]egislature has established a regulatory scheme whereby it has committed the resolution of those issues or the making of those findings to an administrative body.

*Northwinds*, 69 F.3d at 1311. In this case, many, if not all, of Plaintiff's causes of action depend upon an ultimate finding that Plaintiff should not have been denied coverage by Defendant under the workers' compensation scheme.[11] Thus, the crux of this case is Plaintiff's "breach of contract" claim. If her claims for coverage were properly denied, Plaintiff could not pursue her negligence, gross negligence, breach of fiduciary duty (assuming there is indeed such a duty under Texas law for the particular parties involved), fraud, unfair settlement practices, DTPA, and her claims based on the Texas Insurance Code. Indeed, without commenting upon the merits of such a claim, it appears to the Court that only Plaintiff's intentional infliction of emotional distress claim could be pursued if Plaintiff's underlying "wrongful denial of coverage" claim has no merit.

As discussed above, the Texas Legislature has committed the determination of the merits of a claim under the workers' compensation scheme to the TWCC. *See* Tex. Lab. Code Ann. § 410 *et seq.* Such a finding is subject to judicial review only after proceeding through the administrative process. *See id.* § 410.251. The entities described in the Labor Code are uniquely qualified to make such a finding, and it is therefore more appropriate that the Court defer to this procedure. *Cf. Northwinds*, 69 F.3d at 1311. The

---

**10.** Analogous is the situation where a plaintiff has previously agreed to arbitrate a single issue and brings suit in a judicial forum on other causes of action that depend, or are derived from, that arbitrable issue. In that situation, a court may properly stay the action, pending resolution of the arbitrable issue that underlies the causes of action before the court. The court, however, does not dismiss the case. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218–22, 105 S.Ct. 1238, 1241–43, 84 L.Ed.2d 158 (1985) (compelling arbitration of arbitral issues,

allowing the District Court to proceed at its discretion on the nonarbitral issues). Likewise, the administrative process is not designed to resolve extra–contractual issues, although these issues many times depend upon the underlying coverage issue. Thus, this Court may properly stay, but not dismiss, this case, pending resolution of the underlying issue in the administrative process.

**11.** *See supra* note 2.

Court holds today that Plaintiff should initially seek a determination of the merits of her underlying coverage/breach of contract claim through the administrative procedures found in the Texas Labor Code. The TWCC is most qualified to determine whether Defendant acted properly when it denied Plaintiff workers' compensation coverage for her various ailments. After such a finding is made, Plaintiff can then properly proceed on those causes of action which are more suited for a judicial forum and not within the purview of the administrative process.

### B. Is Defendant Liable in the Capacity in Which It Was Sued?

■ Having determined that the Court has jurisdiction, the Court finds that it would be futile to stay this case if dismissal is proper for other reasons. Thus, the Court now considers arguments by Defendant that it is not liable in the capacity in which it was sued. Plaintiff sued Defendant claiming Defendant was the "insuring entity." Defendant argues that it is not the insuring entity, but instead is the servicing company, and the Facility is in fact the insuring entity. The Court agrees; however, following administrative review of the coverage issue, this case will still proceed.

■ The Facility is a nonprofit, unincorporated association of insurers created to provide worker compensation coverage for those Texas employers unable to secure insurance on the open market. *See* TEX. INS. CODE ANN. art. 5.76–2, §§ 2.01–.02, 4.01 (Vernon Supp.1997). Such compensation is provided through the Texas Workers' Compensation Employers' Rejected Risk Fund (the "Fund"). *See id.* When the Facility determines that an employer qualifies for insurance under the Fund, the Facility calculates the employer's deposit premium and designates a "servicing company" to issue the policy. This servicing company then contracts with the Facility to issue policies evidencing the insurance coverage provided by the Fund and to service the risk. *See id.*

§ 1.01(15). Thus, the servicing company is the *issuer* of the policy, but the Facility itself is the insurer. *See id.* § 4.02(b); *Northwinds,* 69 F.3d at 1306; *Storebrand,* 974 F.Supp. at 1009; *All Star Sheet Metal and Roofing, Inc. v. Texas Dept. of Ins.,* 935 S.W.2d 186, 187 n. 2 (Tex.App.—Austin 1996, no writ); *Maintenance, Inc. v. ITT Hartford Group, Inc.,* 895 S.W.2d 816, 819 (Tex.App.—Texarkana 1995, writ denied). After the policy is issued, the members of the Facility then collectively reinsure it. *See* TEX. INS.CODE ANN. art. 5.76–2, § 4.02(b). Each member's share of the reinsurance liability is based on the amount of premiums on insurance written by that member during the preceding year. *See id.* The servicing company, therefore, is not liable under the policy as the primary insurer. Instead, it is only liable as an insurer if it is a member of the Facility, and then only to its extent of reinsurance liability.[12]

■ Having determined that Defendant is only the servicing company and not the insuring entity, the Court now considers Plaintiff's claim alleging breach of the common law duty of good faith and fair dealing. Only an insurer, here the Facility, and not an agent, here the Defendant servicing company, can be liable for breach of the common–law duty of good faith and fair dealing. *See Northwinds,* 69 F.3d at 1311; *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 696 (Tex.1994); *Maintenance, Inc.,* 895 S.W.2d at 818; *Storebrand,* 974 F.Supp. at 1009. Therefore, Plaintiff, an employee, has no cause of action against a servicing company for breach of the common–law duty of good faith and fair dealing. *Cf. Northwinds,* 69 F.3d at 1311 (stating that an employer has no cause of action for breach of the duty of good faith and fair dealing); *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 262–63 (5th Cir.1995); *Natividad,* 875 S.W.2d at 696 ("An insurance carrier, not its agents and contractors providing claims handling services, is liable to the insured for actions by agents or contrac-

---

12. Although not liable as an insurer, the service company performs many of the traditional functions of an insurer. *See Northwinds,* 69 F.3d at 1306. It not only issues the policy, but it also investigates claims, pays claims, inspects for risks, and conducts legal support as provided by the policy. *See* TEX INS.CODE ANN. art. 5.76–2, § 4.08(c). The coverage itself comes from the Fund, separate from the state treasury and with its own investment policy. *See id.* § 2.07.

tors that breached the duty of good faith and fair dealing owed by the carrier to the insured.").[13] Thus, in accordance with FED. R.CIV.P. 12(b)(6), Plaintiff's claim alleging breach of the common–law duty of good faith and fair dealing is **DISMISSED WITH PREJUDICE.** In regards to Plaintiff's remaining claims, regardless of what term Plaintiff uses to refer to Defendant in her Complaint, the Court finds dismissal is improper. Following administrative resolution of Plaintiff's coverage claim, these extra-contractual claims may· proceed. *See Maintenance*, 895 S.W.2d at 819 (noting that an agent servicing company can be liable for its own negligence and violations of the DTPA and Texas Insurance Code).

### III. CONCLUSION

As discussed in footnote 4 *supra*, the Court today does not address Plaintiff's arguments that the time periods for seeking administrative review of her coverage denial has past.[14] Thus, the Court hereby **STAYS** this proceeding until such review is made. After Plaintiff avails herself of the available administrative remedy on the issue of coverage, *and on that issue alone*, this case will proceed. The Court further **ORDERS** that such review, which can be initiated by either party, be sought within thirty days. The Court notes that, pursuant to *Penny*, and upon motion by either party, the coverage issue may properly be decided by this Court if resolution of this issue is not completed by the TWCC within a reasonable time. *See Penny*, 906

F.2d at 188–89 (declaring that when primary jurisdiction is applicable, the court has concurrent jurisdiction; thus, if the administrative body does not make a finding within a reasonable time, the case may properly return to the court for disposition).

For the reasons set forth above, Plaintiff's claim alleging breach of the common–law duty of good faith and fair dealing is **DISMISSED WITH PREJUDICE.** Defendant's Motion to Stay Proceedings is **GRANTED,** and this case is temporarily **STAYED** and **ADMINISTRATIVELY CLOSED,** pending resolution of all administrative proceedings pursuant to the Texas Labor Code. The parties are **ORDERED** to initiate such review within thirty (30) days of the date of this Order. The parties are further **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also instructed to file nothing further on these issues in this Court, including motions to reconsider and the like, unless compelling evidence warrants such a reconsideration. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

### FINAL JUDGMENT

For the reasons set forth in the Order issued by the Court on this date, Plaintiff's

---

**13.** In *Storebrand,* this Court stated

An employer, does, however, have a cause of action against the service company in its agent capacity for violations of the DTPA and the Texas Insurance Code because "an agent may be liable for its own acts of negligence or fraud committed in performing a contract for its principal if those negligent or fraudulent acts cause reasonably foreseeable harm to a third party."

*Storebrand,* 974 F.Supp. at 1009 (quoting *Maintenance*, 895 S.W.2d at 819). Thus, if Plaintiff can establish the requisite facts, her claims alleging violations of the DTPA and the Texas Insurance Code have a basis in law. Moreover, although there is no bad faith action available to Plaintiff, according to Texas law, the same predicate must be established by Plaintiff as that required for a bad faith cause of action to recover under these statutes. *See Higginbotham v. State Farm Mut. Auto. Ins. Co.,* 103 F.3d 456, 460 (5th Cir.1997).

Finally, the Court notes that in Texas the proof needed to establish bad faith has changed. *See Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 55–56 (Tex.1997) (adopting the "reasonably clear" standard found in TEX.INS.CODE ANN. art. 21.21, § 4(ii)).

**14.** The relevant Texas Administrative Code provision requires a claimant to submit her claim for review within one year after the date of the medical service in dispute. *See* TEX. ADMIN. CODE ANN. TITLE 28 § 133.305 (VERNON 1997). NO TIME LIMIT IS GIVEN IN THE TEXAS LABOR CODE FOR A CLAIMANT TO SEEK A BENEFIT REVIEW CONFERENCE. *SEE* Tex. Labor Code Ann. §§ 410.006–410.030. If, for whatever reason, the TWCC refuses to hear this case based on any applicable limitations periods, this case will simply return to this Court for resolution of remaining claims. *See Penny,* 906 F.2d at 188–89.

claim alleging breach of the common–law duty of good faith and fair dealing is **DISMISSED WITH PREJUDICE.** The remaining claims are hereby **STAYED** and **ADMINISTRATIVELY CLOSED,** pending the right of Plaintiff to re–open upon the *final* exhaustion of *all* administrative procedures applicable to this case. The parties are **ORDERED** to bear their own taxable costs, expenses and attorneys' fees incurred herein to date.

**THIS IS A FINAL JUDGMENT.**