# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00326-CV

**Sunbeam Environmental Services, Inc. and Alphonso Solomon and Company, Inc., Appellants**

**v.**

**Texas Workers' Compensation Insurance Facility, succeeded by the Facility Insurance Corporation, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. 97-0115, HONORABLE SCOTT JENKINS, JUDGE PRESIDING

Appellants Sunbeam Environmental Services, Inc. (Sunbeam) and Alphonso Solomon and Company, Inc. (ASC) challenge a judgment favoring the Texas Workers' Compensation Insurance Facility (the Facility).[1] The district court found appellants jointly and severally liable to the Facility for unpaid premiums, interest on those premiums, and attorney's fees. Because we find this cause is not barred by the statute of limitations and the evidence is sufficient to support the award, we affirm the district court's judgment.

---

[1] According to testimony at trial and appellate briefs, the Facility Insurance Corporation succeeded the Texas Workers' Compensation Insurance Facility. The succession had occurred by time of trial and had no known effect on this case; we will refer to appellee simply as the Facility.

## BACKGROUND

Sunbeam and ASC are both Texas corporations wholly owned by Alphonso Solomon (Solomon). Sunbeam received workers' compensation insurance coverage through the Facility. The Facility was "a private, non-profit, unincorporated association of insurers authorized to write workers' compensation insurance in Texas for employers who are unable to obtain coverage through private insurance companies." *See All Star Sheet Metal & Roofing, Inc. v. Texas Dep't of Ins.*, 935 S.W.2d 186, 189 (Tex. App.—Austin 1996, no writ).

This dispute concerns premiums on policies in effect in 1992 and 1993. Workers' compensation insurance premiums are based on payroll expenditures. Insureds are required to pay premiums based on their estimated payroll, but the final premium cannot be calculated until all salaries and wages for the coverage period have been disbursed. Part five of the standard workers' compensation insurance policy calls for a payroll audit to calculate the final premium within three years of the end of the coverage period. Coverage for Sunbeam under the first policy in this case began January 29, 1992. Upon learning that Sunbeam was a "combinable" risk with ASC because Solomon wholly owned both companies, the Facility required ASC to apply for coverage or the Facility would cancel Sunbeam's policy. ASC applied and, on February 21, 1992, was added as an insured through an endorsement on the first policy issued to Sunbeam. The two companies renewed coverage under the second policy for the year beginning January 29, 1993. The Facility canceled the second policy on June 8, 1993, for nonpayment of premiums and failure to make required reports.

The district court found that appellants owed the Facility for unpaid premiums on these policies, less an offset due for a refund of a maintenance tax. Audits showed that appellants owed $7,520.13 in additional premium on the first policy and $5,808.33 in premium on the second

2

policy, less the credit of $871.47, yielding a total due of $12,456.99; the court also assessed prejudgment interest of $6,223.27, court costs, and postjudgment interest. The court awarded attorney's fees of $3114 plus additional amounts for appeals.

## DISCUSSION

Appellants raise eight issues on appeal. They assert that limitations bars the Facility from recovering on the first policy. By five issues, they complain about various aspects of the evidence admitted in support of the judgment, including the sufficiency of the evidence. They further complain that the Facility did not give pre-suit notice sufficient to empower the court to award attorney's fees and that attorneys not designated as the attorney in charge purported to act for the Facility.

### Limitations

Appellants contend that the statute of limitations bars the Facility's claims for premiums owed on the policy that expired at 12:01 a.m. on January 29, 1993. Because this is a suit for debt based on a breach of contract, a four-year statute of limitations applies. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (West Supp. 2002). Appellants contend that the suit was filed too late because it was filed hours after the four-year period expired at 12:01 a.m. on January 29, 1997.

We find no authority to support appellants' assertion that limitations periods are computed on any unit of time shorter than a day. The Facility's cause of action was thus timely filed even if the limitations period began running on January 29, 1993.

The limitations period did not begin running on January 29, 1993, however. Part five of the workers' compensation policy states that, because the final premium is based on the actual

3

payroll disbursed, the final premium cannot be determined until after the end of the policy term; the policy specifies that the audit will occur within three years of the end of the policy term. Here, the auditors sent an invoice on May 28, 1993 for the additional $7520.13 they determined appellants owed in premiums on the first policy. This suit for collection of this amount, filed less than four years after the date of this invoice, was timely.

**Sufficiency of the evidence**

Appellants raise five issues that essentially challenge the sufficiency of the evidence to support the judgment. When reviewing no-evidence challenges, we will consider all the evidence in the light most favorable to the judgment, making every reasonable inference in its favor. *See Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994). We will uphold the jury's finding if more than a scintilla of evidence supports it. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995); *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 755 (Tex. 1970); *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951). The evidence supporting a finding is more than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. *See Crye*, 907 S.W.2d at 499; *Moriel*, 879 S.W.2d at 25. When reviewing factual-sufficiency challenges, we consider all the evidence and uphold the jury's verdict unless we find that (1) the evidence is too weak to support the finding, or (2) the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

Appellants complain that the Facility did not provide "complete documents as evidence to show the court that a contract was violated." They point to the sole witness's testimony that she did not know whether appellants had received any of the insurance documents. Appellants' argument regarding receipt of the contract is made for the first time on appeal. The witness was an employee of the Facility, not the servicing company or any of the appellants, and so did not have direct knowledge of what the servicing company sent or what the appellants received. She testified that the standard procedure would be for the servicing company to send to the insured a standard policy with boilerplate language dictated by the State. The policy's boilerplate language explains the process of estimating premiums and calculating them within three years after the coverage period based on actual payroll. Though the Facility did not introduce a copy of a policy contained in appellants' files, there was no evidence that the appellants' contract differed in any material respect from the contracts in evidence used to illustrate the terms of appellants' contract. Further, appellants' attorney effectively conceded receipt and coverage at trial, stating that "no one is arguing that they're not covered by insurance." The evidence admitted was sufficient to show the terms of the contracts.

Appellants next contend that ASC was only an additional named insured and not liable for premiums on Sunbeam's policies. They contend that ASC never had an account or policy with the Facility, that a policy was never issued to ASC, and that ASC never received a policy or endorsement. Appellants do not cite to any evidence from the trial record supporting these claims. Appellants' argument that ASC had no liability for premiums is premised on the fact that ASC did not voluntarily apply for the insurance policy. The Facility did not mandate that ASC request coverage; Solomon could have chosen to forego workers' compensation insurance for both companies, but chose to apply for coverage for ASC to preserve coverage for Sunbeam. The only

5

evidence is that ASC applied for and received coverage on equal footing with Sunbeam—ASC was "combined" with Sunbeam for purposes of workers' compensation insurance—rather than passively receiving coverage under Sunbeam's policy. The January 1993 application for insurance lists both Sunbeam and ASC as names of the applicant, as does the binder issued for that policy. Both companies were wholly owned by Solomon and received their mail at the same address. The only evidence is that both were insureds, and thus that they were both liable for premiums owed on the coverage provided to both companies. The evidence supports the finding that ASC shared liability for premiums for the coverage provided.

Appellants contend for the first time on appeal that the Facility miscalculated the premiums due on both policies. They contend that they were erroneously charged the same rate for supervisory employees as for janitorial workers, causing overcharges because the rate for supervisory employees was lower. The affidavits attached to appellants' brief were not offered or admitted at trial and do not bear file stamps indicating that they were filed with the district court. Some of the exhibits attached to the affidavits are the same as documents admitted at trial, but they do not require us to find that the Facility miscalculated the premiums due. Appellants neither preserved this argument nor presented a record requiring reversal.

**Attorney's fees**

Appellants contend that the Facility cannot recover attorney's fees because it did not give proper notice before filing suit. They also contend that bills sent do not satisfy the statute

permitting attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.002 (West 1997).[2] Appellants contend the bills do not satisfy the statute because they were not issued by the Facility's attorney. Appellants misread section 38.002; though the party requesting attorney's fees must both make demand for payment (to ensure that the debtor is aware of the debt being sued upon) and be represented by counsel (so that there is an attorney who is due the fees requested), there is no requirement that the demand must be made *by* counsel. *See id.* The only evidence in the record is that the Facility sent invoices to the appellants for premiums due on each of the policies; there is no evidence in the trial record that the appellants did not receive the bills. The only evidence is that appellants failed to pay the amounts the Facility billed them and that the Facility was represented by counsel. The record supports the conclusion that the Facility satisfied section 38.002. *Id.*

In their reply brief, appellants for the first time challenge their liability for $350 in attorney's fees awarded to the Facility for filing a motion to compel them to respond to interrogatories. A reply brief is limited in scope to responding to matters in an appellee's brief. Tex. R. App. P. 38.3. The Facility did not mention the $350 award. Appellants waived this complaint by failing to raise it in their initial brief.

**Authorization of attorneys**

Appellants contend that all pleadings and documents filed by attorneys other than David Dillon were unauthorized. Appellants correctly assert that, by signing the Facility's original

---

[2] This statute requires that "(1) the claimant must be represented by an attorney; (2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and (3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented." Tex. Civ. Prac. & Rem. Code Ann. § 38.002 (West 1997).

petition, Dillon became the Facility's attorney in charge. *See* Tex. R. Civ. P. 8. The record plainly shows that attorneys other than Dillon signed and filed documents without being designated as attorneys in charge. All attorneys signing and filing documents on the Facility's behalf were from the same firm as Dillon. Though appellants were entitled to continue to correspond with the attorney in charge, they cite no authority for the proposition that documents filed by other attorneys from his firm were invalidly filed. Most important, appellants have not shown how they were harmed by the filing of documents by co-counsel in the firm of the attorney in charge. *See* Tex. R. App. P. 44.1; *see also Spellmon v. Collins*, 970 S.W.2d 578, 580 (Tex. App.—Houston [14th Dist.] 1998, no pet.). We resolve this issue in favor of the judgment.

## CONCLUSION

Having resolved all issues in favor of the judgment, we affirm the district court's judgment.

_____

—

Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: February 22, 2002

Do Not Publish

8