John O. SWANSTROM, individually and as personal representative of the Estate John E. Swanstrom, Jr., deceased, et al., Plaintiffs,

v.

TELEDYNE CONTINENTAL MOTORS, INC.; et al., Defendants.

Civil Action No. 07–0654–KD–C.

United States District Court, S.D. Alabama, Southern Division.

Jan. 10, 2008.

Casey Frances Schaden, Richard Francis Schaden, Broomfield, CO, Stephen Charles Moore, Moore & Wolfe, P.C., Mobile, AL, for Plaintiffs.

Norman E. Waldrop, Jr., Armbrecht Jackson LLP, Mobile, AL, Jacob Michael Tubbs, John Banks Sewell, III, Lightfoot, Franklin & White, Birmingham, AL, Patrick Eugene Bradley, Princeton, NJ, for Defendants.

## ORDER

KRISTI K. DuBOSE, District Judge.

This matter is before the court on plaintiffs' motion to remand (doc. 11). Upon consideration, and for the reasons set forth herein, the motion to remand is **GRANTED.**

I. *Factual Background*

On May 28, 2002, John E. Swanstrom died in an airplane crash in Angel Fire,

New Mexico. He was piloting a Cirrus SR20 aircraft. The engine of the Cirrus SR20 was manufactured by Teledyne. On March 8, 2004, plaintiff John O. Swanstrom, individually and as personal representative of the Estate of John E. Swanstrom, Jr., deceased, filed a complaint in the Circuit Court of Mobile County, Alabama. (Doc. 2). On December 24, 2004, the complaint was amended to provide a more definite statement and then on October 4, 2006, the complaint was amended to include the decedent's wife Patricia M. Swanstrom, and his daughters Sally A. and Jennifer Swanstrom.

Plaintiffs seek damages for the wrongful death of Swanstrom and allege that the accident was caused by malfunction or failure of the engine or other aircraft system. They bring claims of negligence, breach of warranty, and product liability. Their claim for negligent misrepresentation has been dismissed by the state circuit court. In their complaint plaintiffs allege that the crash and Swanstrom's death was directly and proximately caused by the acts or omissions of the defendants. Specifically, they allege that the Teledyne defendants' "negligence and breach of their duty of care ... included, but was not limited to" their "[n]egligent failure to properly" design, manufacture, test, inspect, build, construct, assemble, install, warn and instruct regarding operation and maintenance of the "subject engine and its component parts, specifically including the engine driven fuel pump," and "warn of previous in-flight problems with the engine driven fuel pump". (Doc. 2–2, Exhibit A, complaint; Doc. 2–3, Exhibit B, first amended complaint). As to the Cirrus defendants, plaintiffs allege that their "negligence and breach of their duty ... included but was not limited to" their "[n]egligent failure to properly" design, manufacture, build, construct, assemble, install, test, inspect, "in a manner to ensure its airworthiness" and warn or instruct regarding the aircraft. (Doc. 2–2, Exhibit A, complaint). In their first amended complaint as to the Cirrus defendants, plaintiffs add the claim of negligent failure to design, manufacture, build, construct and/or assemble the airframe of the subject aircraft. (Doc. 2–3, Exhibit B).

Relevant to the issues before the court, in the Cirrus defendants' answer to the first amended complaint dated January 3, 2005, and the second amended complaint dated October 18, 2005, they raise as a defense that "[t]he subject aircraft was designed in full compliance with applicable federal safety regulations and/or standards". (doc. 11–2, p. 14, p. 41). In the Teledyne defendants' answer to the second amended complaint dated November 14, 2006, and their answer to the third amended complaint dated December 27, 2006, they raised as a defense the doctrine of preemption and assert as follows:

> The federal government has, pursuant to Federal Aviation Act of 1958, as amended, adopted a comprehensive set of safety regulations exclusively governing the design and manufacture of airplanes and their component parts, including engines, and has vested the Federal Aviation Administration with exclusive authority to implement and police compliance with those regulations. Pursuant to such authority, the FAA heretofore certified that the design and manufacture of this defendant's product complied with all applicable safety regulations. As a result, state law concerning the design and manufacture of aviation products including the one at issue here has been preempted by federal law and regulation and the Plaintiffs' state law claims are therefore barred by the doctrine of federal preemption.

(Doc. 11–2, p. 67, p. 96)

On June 8, 2006, Dennis Sommer, plaintiffs' expert, testified that he had never

participated in the certification procedure for a firewall for an aircraft but had dealt with the federal air regulations for firewalls in this type aircraft before. Sommer testified that he did not review the firewall regulations for this case because he did not think it was relevant for him to know the federal air regulations on firewalls. (Doc. 23–4, Exhibit C)

On July 18, 2007, the Teledyne defendants' deposed defense expert Douglas Marwill, who testified that he was designated by the Federal Aviation Administration (FAA) as the person to witness the testing of the aircraft on behalf of defendant Cirrus, i.e., a designated engineering representative or DER. He also testified that the testing plan or procedure first had to be approved by the FAA and then the testing would proceed and a report prepared. He testified that after the report was finished, he would read the report and if found in compliance, i.e., the parts passed the test, he would complete a form for the FAA which indicated that defendants had shown compliance, and in the case of the fire protection testing on the firewall in the Cirrus plane, that the material was fireproof. (Doc. 23–3, Exhibit B).

On August 30, 2007, plaintiffs filed their expert rebuttal disclosure regarding Sommer's anticipated testimony wherein plaintiffs assert that Sommer, among other statements, will rebut that the engine compartment is in compliance with the Federal Air Regulations. (Doc. 23–2, Exhibit A, p. 3). Defendants allege that in plaintiffs' expert rebuttal disclosures of August 30, 2007, "[f]or the first time in this litigation, Plaintiffs alleged that the engine installation of the accident aircraft did not comply with the applicable Federal Air Regulations, thereby alleging that the aircraft was negligently or improperly certified."

(Doc. 2, p. 3). Defendants assert that prior to this time, "Cirrus had no right to remove because Plaintiffs had not asserted a claim which would implicate federal officer jurisdiction." (Doc. 25, p. 4).

On September 17, 2007, defendants removed this action to federal court on the basis of federal officer removal pursuant to 28 U.S.C. § 1442(a)(1), asserting that defendant Cirrus was acting under an officer of the United States. Specifically, defendants state that the Administrator of the Federal Aviation Administration had designated specific persons at Cirrus to represent the FAA in examining, inspecting, testing, and certifying the airworthiness of the aircraft involved in the accident. Defendants also contend that their removal is timely because plaintiffs' expert rebuttal disclosure filed August 30, 2007 constitutes "other paper from which it may first be ascertained that the case is one which is or has become removable", as contemplated by 28 U.S.C. § 1446(b). (Doc. 2). Plaintiffs argue that the case should be remanded because the defendants' notice of removal is untimely and that even should the court find that it is timely filed, defendants cannot meet the requisite elements to establish federal officer removal jurisdiction.

## II. *Removal under 28 U.S.C. § 1442(a)(1)*

Title 28 U.S.C. § 1442(a)(1), captioned "Federal officers or agencies sued or prosecuted" states as follows:

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person

acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). The Court of Appeals for the Eleventh Circuit has explained that the "purpose of section 1442(a)(1) is to 'permit[ ] the removal of those actions commenced in state court that expose a federal official to potential civil liability or criminal penalty for an act performed ... under color of office.'" *Magnin v. Teledyne Cont'l Motors,* 91 F.3d 1424, 1427 (11th Cir.1996) quoting *Murray v. Murray,* 621 F.2d 103, 107 (5th Cir.1980).[1]

▮▮ Even when removal is brought pursuant to 28 U.S.C. § 1442(a)(1), federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). As such, federal courts only have power to hear cases that they have been authorized to hear by the Constitution or by an Act of Congress. *Id.* at 377, 114 S.Ct. 1673. A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441, and therefore "bears the burden of proving proper federal jurisdiction." *Leonard v. Enterprise Rent a Car,* 279 F.3d 967, 972 (11th Cir.2002); *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1288 n. 4 (11th Cir. 1998). To do so, the removing defendant must "produc[e] facts supporting the existence of federal subject matter jurisdiction

by a preponderance of the evidence." *Hobbs v. Blue Cross Blue Shield of Ala.,* 276 F.3d 1236, 1242 (11th Cir.2001). Generally, removal statutes should be strictly construed against removal and all doubts or uncertainties concerning jurisdiction should be resolved in favor of remand. *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994).

▮▮ The "federal officer provision is 'not "narrow" or "limited"' but instead 'is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law.'" *McMahon v. Presidential Airways, Inc.,* 410 F.Supp.2d 1189, 1196 (M.D.Fla., 2006). "Notwithstanding its broad application, because the federal officer removal statute is predicated 'on the protection of federal activity and an anachronistic mistrust of state courts' ability to protect and enforce federal interests and immunities from suit, private actors seeking to benefit from its provisions bear a special burden in establishing the official nature of their activities.'" *Williams v. General Elec. Co.,* 418 F.Supp.2d 610, 614 (M.D.Pa., 2005) quoting *Freiberg v. Swinerton & Walberg Property Svcs., Inc.,* 245 F.Supp.2d 1144, 1150 (D.Col., 2002) (citations omitted).

▮▮ Section 1442(a) looks to whether the defense depends upon federal law and not the complaint and "serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged." *Mesa v. California,* 489 U.S. 121, 136–137, 109 S.Ct. 959, 968, 103 L.Ed.2d 99 (1989) (citations omitted). In *McMahon,* the district

---

**1.** Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent on the Eleventh Circuit. *Bonner v. City of Prichard, Alabama,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

court explained removal under § 1442(a) as follows:

> Thus, although ordinarily removal cannot be based merely on the presence of "an anticipated or actual federal defense," "[u]nder the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law."

410 F.Supp.2d 1189, 1195–1196 (M.D.Fla., 2006) quoting *Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999) (other citations omitted).

■ Moreover, 28 U.S.C. § 1442(a) provides for removal only when "(1) a defendant has acted under the direction of a federal officer, (2) there was a causal connection between its action and the official authority, (3) the defendant has a colorable federal defense to the plaintiff's claims, and (4) the defendant is a 'person' within the meaning of the statute." *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 967 n. 2 (8th Cir.2007) citing *Jefferson County v. Acker*, 527 U.S. 423, 430–431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999).

■ Taking the latter element first, the majority of courts when confronted with a case involving federal officer removal have held that a corporation is a "person" as contemplated under the Act. *McMahon*, 410 F.Supp.2d at 1196 (finding that Presidential met all four requirements and thus finding that it was a person for purposes of the Act); *see Alsup v. 3–Day Blinds, Inc.*, 435 F.Supp.2d 838, 845 n. 3 (S.D.Ill., 2006) (listing cases which have held that a corporation is a 'person' for purposes of this statute); *see Jones v. Three Rivers Elec. Co-op.*, 166 F.R.D. 413, 414 (E.D.Mo.,

1996) (finding that "[u]nless the context indicates otherwise, courts must interpret 'person' in a federal statute to include corporations. 1 U.S.C. § 1. The context of § 1442(a)(1) does not indicate that 'person' should be construed to exclude corporations. Therefore, the Court finds that 'person' as used in the statute encompasses corporations."); *see also Livingston v. Blue Cross and Blue Shield of Alabama*, 788 F.Supp. 545, 547 (S.D.Ala., 1992) (deeming a suit against BCBS as a suit under § 1442(a) "even though it is brought against a corporation and its employees, because of the contractual relationship between defendant Blue Cross and the Department of Health and Human Services, an agency of the United States.") Therefore, the court finds that defendants, as a corporation can be considered a person for purposes of 28 U.S.C. § 1442(a)(1).

■ As to the first element, the defendants assert that Cirrus acted under the direction of a federal officer when its employees Marwill and other Cirrus DERS, acting under authority granted from the FAA, conducted testing and prepared FAA certifications. To determine whether a defendant is acting "under the direction of a federal officer" depends on the " 'detail and specificity of the federal direction of the defendant's activities and whether the government exercises control over the defendant.' " *King v. Provident Bank*, 428 F.Supp.2d 1226, 1231 (M.D.Ala., 2006) quoting *Watson v. Philip Morris Companies, Inc.*, 420 F.3d 852, 856–857 (8th Cir.2005). "A defendant's actions taken pursuant to a comprehensive and detailed federal regulatory scheme may qualify the defendant as "acting under" the direction of a federal officer." *Id.* "However, '[m]ere participation in a regulated industry is insufficient to support removal

unless the challenged conduct is closely linked to detailed and specific regulations.'" *Id.* at 1231–1232 (internal quotation marks and citations omitted).

In support of their position the Cirrus defendants rely upon *Magnin,* wherein the court found that FAA designated manufacturing inspection representatives (DMIR) were sufficiently controlled by government officials to qualify as a person acting under a federal officer within the meaning of 28 U.S.C. § 1442(a)(1). *Magnin,* 91 F.3d at 1429 n. 1. In Magnin the court reasoned that "[i]n light of the complaint in this case, which specifically identifies Smith as a DMIR, specifically alleges that he exercised his official authority as a DMIR in signing the export certificate when the engine was not airworthy, and specifically avers that that was a proximate cause of the crash removal was proper." *Id.* at 1429. Clearly *Magnin* is factually distinguishable; in the present case the complaint fails to name as a defendant any FAA authorized agent. Although it is probable that a designated engineering representative (DER) such as Marwill who is subject to administrative regulations by the FAA, *see* 14 C.F.R. § 183.29, would be considered a person acting under a federal officer, neither Marwill nor any other DER employed with the Cirrus defendants has been named in this lawsuit.

Defendants also rely upon *McMahon* for the proposition that Cirrus can claim removal under 28 U.S.C. § 1442(a)(1) because they have employees who are designated FAA authorized agents. However, *McMahon* is also clearly distinguishable, In *McMahon,* as in the present case, no DER or DMIR was sued individually. However, the corporate defendant, Presidential Airways, had a contract with the United States military to provide air travel in Afghanistan and the defendants successfully established that the United States exercised substantial and direct control over the flights. *McMahon,* 410 F.Supp.2d at 1196–1197. The Cirrus defendants have not established, nor even alleged, that they had a contract or any relationship with the FAA such that the FAA exercised substantial and direct control over the corporate entity Cirrus. In other words, the Cirrus defendants have presented no evidence or argument that they are designated in any manner as a representative of the FAA to act on its behalf in performing official duties. It is not sufficient for the Cirrus' defendants to assert that their acts fall under the general auspices of a federal officer or fall within the purview of "participation in a regulated industry". *King,* 428 F.Supp.2d at 1231–1232; *Ryan v. Dow Chemical Co.,* 781 F.Supp. 934, 947 (E.D.N.Y.1992) (finding that a majority of courts have found that the federal officer must have "direct and detailed control" over the defendant). The court acknowledges that manufacturing an airplane and its parts is highly regulated by the FAA, but expanding participating in a regulated industry to allow removal under the federal officer removal statute is not the purpose or intent of the statute.

The Supreme Court has discussed FAA representatives and explained that the FAA representative acts as a surrogate for the FAA.

> By regulation, the Secretary has provided for the appointment of private individuals to serve as designated engineering representatives to assist in the FAA certification process. These representatives are typically employees of aircraft manufacturers who possess detailed knowledge of an aircraft's design based upon then day-to-day involvement in its

development. The representatives act as surrogates of the FAA in examining, inspecting, and testing aircraft for purposes of certification. In determining whether an aircraft complies with FAA regulations, they are guided by the same requirements, instructions, and procedures as FAA employees.

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 807, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). The FAA has stated that "[w]hen performing a delegated function, designees are legally distinct from and act independent of the organizations that employ them." *Establishment of Organization Designation Authorization Program,* 70 Fed.Reg. 59,932, 59,933 (Oct. 13, 2005). Thus, Cirrus can not claim removal under 28 U.S.C. § 1442(a)(1) simply because they have employees who are designated FAA authorized agents. Rather, removal is appropriate only where the FAA representative has been specifically named and the allegations relate to conduct of the FAA representative while acting in the capacity of an FAA representative.

### III. *Plaintiffs' Request for Attorney Fees and Costs* [2]

■ In the motion to remand, plaintiffs argue that Rule 11 sanctions should be imposed because defendants failed to provide proper evidence that they were acting under a federal officer and omitted the fact that in 2005 they asserted affirmative defenses based on federal law. (Doc. 11). Also, in the reply to defendants' response to the motion to remand, plaintiffs argue that defendant Cirrus has no reasonable basis for the untimely removal, that Cirrus

strategically misused 28 U.S.C. § 1442(a)(1) and § 1446(b) to prolong litigation and increase plaintiffs' costs, and that Cirrus misrepresented and omitted facts to the court, and therefore sanctions under 28 U.S.C. § 1447(c), specifically an award of their attorney fees, costs, and expenses of remand, are justified. (Doc. 30).

In response, defendant Cirrus argues that it did not make false statements and that its removal papers are well-grounded in the applicable law of federal officer removal jurisdiction; therefore, Rule 11 sanctions are not appropriate. Defendant Cirrus also argues that an objectively reasonable basis exists for removal, specifically plaintiffs' recent assertions in their rebuttal expert disclosures, and thus removal was justified.

■ Attorney's fees, costs and expenses may be awarded on a motion to remand "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 126 S.Ct. 704, 711, 163 L.Ed.2d 547 (2005). In *Martin,* the Supreme Court set forth that the "appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* The Court further stated that

> [i]n light of these " 'large objectives,' " ... the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the re-

---

**2.** The court notes that plaintiffs amended their motion to remand and withdrew their

motion for sanctions pursuant to Rule 11 against the Teledyne defendants. (Doc. 21).

moving party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.... In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case. For instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees. When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be "faithful to the purposes" of awarding fees under § 1447(c).

*Id.*

Upon application of the standards set forth in *Martin,* the court finds that this is not a case where defendants' basis for removal is objectively unreasonable; the basis was wrong but not unreasonable. Therefore, the undersigned declines to award sanctions in this matter and plaintiffs' motion for attorney's fees, costs, and expenses is **DENIED.**

IV. *Conclusion*

Therefore, upon consideration of plaintiffs' motion to remand and defendants' response, the Court resolves the uncertainties as to the jurisdiction in favor of remand, and finds that it lacks jurisdiction over this matter because jurisdiction under 28 U.S.C. § 1442(a)(1) is not available. Accordingly, plaintiffs' motion to remand (doc. 11) is **GRANTED** and this case is remanded to the Circuit Court of Mobile County, Alabama. Additionally, the court finds that sanctions pursuant to 28 U.S.C. § 1447(c) are not warranted and plaintiffs' motion for sanctions is **DENIED.**